### WHITTEMORE v. PATTEN et al.

(Circuit Court, S. D. California. November 15. 1897.)

No. 687.

1. EQUITY PLEADING—EXCEPTIONS TO ANSWER—AMENDMENT.
   Prayers to exceptions taken to an answer being purely matter of form, where objection is made on the ground of their omission leave may be given to supply them by amendment.

2. SAME—ANSWER—IMPERTINENCE.
   Allegations by defendants that the plaintiff in a bill for an accounting respecting his employment by defendants as agent to sell machinery on commission violated his contract of agency, by neglecting the business, to the damage of defendants, sets out a purely legal demand, not pleadable in an answer to the bill.

3. SAME—MATTERS FOREIGN TO ISSUES.
   An allegation in an answer that plaintiff brought the suit in a state distant from that of defendants' residence for the purpose of harassing them, and involving them in large expense, is impertinent.

Bill for an accounting filed by Charles A. Whittemore against William H. Patten and Norman Stafford, co-partners as Patten & Stafford. Heard on exceptions to answer.

Haines & Ward, for complainant.
Trippet & Neale and Oscar A. Trippet. for defendants.

WELLBORN, District Judge. This is a suit for an accounting as to transactions had under a contract, of which the following is a copy:

"This agreement, made this eighth day of Sept.. 1885, by and between Wm. H. Patten, Norman Stafford, and John E. Myer, all of Canastota, in the state of New York, co-partners under firm name of Patten, Stafford and Myer, doing business in said Canastota, and Charles A. Whittemore, of Melrose, Massachusetts, witnesseth: That said Patten, Stafford and Myer, in consideration of the promises of said Whittemore hereinafter set forth, do hereby appoint said Whittemore their general agent for the states of Maine, New Hampshire, Vermont. Massachusetts, Connecticut, and Rhode Island, for the sale of their New York Champion Rakes manufactured by said Patten, Stafford and Myer. Said appointment by said Patten, Stafford & Myer is subject to the following conditions: Said Whittemore is to canvass thoroughly, either by himself or by sub-agents to the above named territory. for the sale of the above-named rakes. He is to use his best possible endeavors to sell said rakes, and to take all possible precautions to sell to responsible parties only. He is to forward all orders taken to said Patten, Stafford & Myer. and to collect and settle all accounts, except as provided below. Said Patten, Stafford & Myer agree to send out to all purchasers of said rakes true and accurate statements of their several accounts, and to use their best endeavors to make collections of all said accounts, to the extent that it can well be done by correspondence from their office. In the event of any litigation being made in the collection of any of said accounts, said Patten, Stafford and Myer agree to bear one-half of the legal costs of such litigation. For said services of said Whittemore, said Patten, Stafford and Myer agree to allow said Whittemore, as compensation, one-half (½) of the surplus over and above sixteen ($16.00) dollars for each thill rake, and one-half (½) of the surplus over and above eighteen ($18.00) dollars for each rake with pole and whiffletrees; and it is mutually agreed that the prices above stated apply to the said goods free on board the cars at said Canastota. In consideration of the above, said Whittemore agrees to become the general agent of said Patten, Stafford & Myer for the territory above named, and for the purposes above described. He agrees to use his best endeavors to canvass

thoroughly said territory, either by himself or his subagents; to use all possible precautions to sell to responsible parties only; to send all orders to said Patten, Stafford & Myer; and to make the collections of all claims in his territory not made by said Patten, Stafford & Myer from their office as provided above, bearing one-half of all legal costs of litigation incurred in such collections. He further agrees to accept said sums before mentioned as his compensation for said services. It is further mutually agreed that the accounts between the parties hereto shall be adjusted upon the first day of October of each year during the continuance of this contract; that all accounts outstanding in said Whittemore's territory shall be settled as far as possible by that date. It is also mutually agreed that said Whittemore shall have and receive the same profit upon all sales made in territory which has been worked by said Whittemore in accordance with conditions of this contract, whether the same be made by said Whittemore or his subagents, or by said Patten, Stafford and Myer. In adjusting the accounts between said Whittemore and said Patten, Stafford and Myer, the losses occasioned by bad debts, whether the same be in form of notes or otherwise, shall be borne equally by the parties hereto, and the amount of said losses to be borne by said Whittemore shall be deducted from the amount due him as compensation on the basis of the above-named prices. It is further agreed that, in case notes are taken in settlement of accounts, said Whittemore is to accept in settlement of his compensation above named such proportion of said notes as the amount of such compensation bears to the totals of such accounts. This contract is to be renewed from year to year at the pleasure of said Whittemore, provided said Whittemore faithfully fulfills the conditions thereof to be kept by him, and subject to such necessary changes and revisions of prices as the condition of trade and manufacture may allow or require. In testimony whereof, the above-named parties hereto set their hands and seals, and to our other instrument of like tenor and date, the day and year first above written. (I have interlined above in one place.)

"[Signed]                              Patten, Stafford & Myer.
                                       "Charles A. Whittemore.

"In presence of
   "E. L. Mason.
   "F. N. Coghlan."

The bill alleges, among other things, that in 1892 defendants, Patten and Stafford, purchased the interest of John E. Myer in the partnership of Patten, Stafford & Myer, and thereafter, and up to October 1, 1894, continued said business, including that covered by said contract with complainant, under the firm name of Patten & Stafford; that during the continuance of said contract, up to the date last mentioned, said Patten & Stafford accepted complainant's services under said contract; that, on said last-named date, complainant sought to renew said contract in the manner therein provided, and was able and ready to perform all the conditions of said contract on his part, but that defendants refused to renew said contract, or to permit complainant to act as their agent as therein provided. Complainant prays for an accounting as to the business transacted under said contract during the years ending October 1, 1893, October 1, 1894, and October 1, 1895. Defendants have answered the bill, and to their answer complainant has filed numerous exceptions,—14 for insufficiency, and 2 for impertinence. These exceptions do not contain any prayers, but set out verbatim the particular charges in the bill, which it is claimed are inadequately answered, and also the terms of the answers to such charges. The other facts material to the exceptions are stated later on in this opinion.

Defendants object to the hearing of the exceptions on their merits, for the reason that the grounds of the exceptions are not set out with requisite fullness. This objection, I think, is untenable. The rule formerly on this subject, as announced by high authority, was as follows:

"An objection to an answer for insufficiency should state the charges in the bill, and the interrogatories applicable thereto, to which the answer is responsive, and then the terms of the answer, verbatim, so that the court may see whether it is sufficient or not." Brooks v. Byam, 1 Story, 296, 4 Fed. Cas. 258; Crouch v. Kerr, 38 Fed. 549; 1 Daniell, Ch. Pl. & Prac. (6th Ed.) p. 764.

This rule, however, has necessarily undergone a modification, so far as the interrogatories are concerned, in consequence of the order of the supreme court at the December term, 1850, repealing equity rule 40, and dispensing with interrogatories except when complainant desires them to obtain a discovery. See Hoff. Ch. Prac. pp. 246, 247. The exceptions are sufficiently explicit.

Defendants further object to the form of the exceptions, for the reason that they are without prayers. In answer to this objection, complainant's counsel state that, in preparing the exceptions, appropriate prayers were omitted through inadvertence, and now asks leave to supply such omissions by suitable amendments. Since the prayer, which constitutes part of an exception to an answer, is purely a matter of form, the leave asked for will be granted.

Defendants seek to justify those parts of the answer challenged by exceptions 2, 3, 4, 5, 6, and 7 on the ground that they have no information or belief as to the matters inquired about, and that such lack of information and belief results from the fact that the business for any one year, as the same was conducted under the contract sued on, was not settled and closed up at the end of each year, but was carried over from year to year, so that it is impossible to determine just how much business should be credited to any one year. This contention is vulnerable. One of the allegations in question, for instance (and it illustrates the others), is that the defendants during the year ending October 1, 1893, sold, pursuant to the contract sued on, 1,805 rakes, for the aggregate sum of $31,072.54, etc. Defendants simply deny that they sold 1,805 rakes for the sum of $31,072.54. This denial might be strictly true, and yet the defendants may have sold 1,800 rakes for an aggregate price of $31,000. Such a denial manifestly does not meet the allegation to which it is addressed, and cannot be justified for lack of information and belief, because, presumably, the number of rakes sold, and the prices for which they were sold, during the year mentioned, are within the knowledge of the defendants, and in no wise affected by the continuity of the business through subsequent years.

The allegations of the bill to which the eighth exception relates, though different in some particulars, are similar in character to the allegations referred to in the ninth, eleventh, twelfth, and thirteenth exceptions, and are as follows:

"That said contract, as originally drawn, contained the following clause respecting the compensation of your orator for his services as the general agent of the defendants in the sale of rakes under said contract, to wit: 'For the said

services of said Whittemore, said Patten, Stafford and Myer agree to allow said Whittemore, as compensation, one-half (½) of the surplus over and above sixteen ($16) dollars for each thill rake, and one-half (½) of the surplus over and above eighteen ($18) dollars for each rake with pole and whiffletree; and it is mutually agreed that the prices above stated apply to the said goods free on board the cars at Canastota.' And that said terms of compensation are by the last clause of said contract set forth in 'Exhibit A,' hereinbefore quoted, expressly made 'subject to such necessary changes and revisions of prices as the condition of trade and manufacture may allow or require.' And your orator further shows that the conditions of trade and manufacture of said rakes during the year ending October 1, 1893, made necessary such changes and revisions of the said prices named in said contract as to make your orator's profits and compensation for said year one-half of the surplus of the proceeds of said rakes so sold within said territory over and above an average base price of $13 'free on board the cars at Canastota,' New York, for each of said 1,805 rakes sold by him during said year."

### Defendants answer said allegations as follows:

"Defendants deny that the said terms of compensation are by the last clause of said contract expressly made 'subject to such necessary changes and revisions of prices as the conditions of trade and manufacture may allow or require,' but admit that such words are to be found in the contract. These defendants further deny that the conditions of trade and manufacture of said rakes during the year ending October 1, 1893, made necessary such changes and revisions of the said prices named in said contract as to make complainant's profits and compensation for said year one-half of the surplus of proceeds of said rakes so sold within said territory over and above an average base price of $14 free on board the cars at Canastota, N. Y., for each of the 1,805 rakes alleged to have been sold by him during said year."

### The allegations to which the tenth exception relates, are as follows:

"And your orator further shows that the conditions of trade and manufacture of said rakes during the year beginning October 1, 1894, made necessary, for the purpose of computing and ascertaining your orator's just profits and compensation under said contract for said year, such changes and revisions of said prices for rakes named in said contract as to fix the average base price of $11 for each of said rakes so sold by said defendants within said territory during the year last mentioned."

### The defendants answer said allegations as follows:

"The defendants further deny that the conditions of trade and manufacture of said rakes during the year beginning October 1, 1894, made necessary, for the purpose of computing and ascertaining the complainant's just profits and compensation under said contract for said year, such changes and revisions of prices for rakes named in said contract as to fix the average base price of $11 for each of said rakes so sold by said defendants within said territory during the year last mentioned."

Defendants insist that the allegations of the bill above quoted, and to which those parts of the answer above quoted are responsive, proceed upon an erroneous conception of said contract, and that, therefore, defendants should not be required to answer said allegations more fully, or otherwise than they have already done. Whether or not the bill is defective in assuming that the contract provides for a "base price" or an "average base price," or that there could be, under the contract, changes or revisions of prices for a particular year, without such changes or revisions having been agreed upon by the parties at renewals of the contract, or at other times subsequent to its date, I will not now undertake to decide. The present hearing is not a suitable one for determining the sufficiency or insufficiency

of the bill in the respects named, and said allegations, therefore, should be fully answered.

The fourteenth exception is as follows:

"(14) For that whereas the bill charges, on pages 9 and 10 thereof, the following: 'And your orator shows that all the matters and things in his foregoing bill make a connected series of transactions, and involve a continuous accounting.' The answer to the said averment is in words following, to wit: 'For a fourth and separate defense to the cause of action alleged in the repleaded bill of complaint, defendants allege, on information and belief, the making of the contract Exhibit A between the plaintiff and the defendants and John E. Myer, as hereinbefore fully set forth, and as though set out fully in this count. And defendants further allege that, during the continuance of the business under contract Exhibit A, it has been the practice of having partial settlements in the fall months of each year; that, in said partial annual settlements, all accounts which had been paid in cash to the defendants, or collected by the plaintiff on account of the defendants, were ascertained and settled; that many of the accounts made in the preceding year or years had not, at the time of such settlements, been collected, and some of them in each year were uncollectible and worthless; that it was impossible to make complete annual settlements at the close of each year, so as to wholly close up the accounts made in the previous year; and that the annual settlements and accounts which had been carried over and uncollected when previous settlements were made included any cases where collections on such accounts had been made from year to year in the succeeding year's settlement. Defendants further allege that they have now collected, balanced, and closed up all the accounts to and including the month of September, 1894, and prior thereto, of all rakes sold in the New England territory, either by the plaintiff, his subagents, these defendants, or otherwise, and that, upon balancing up and closing up said accounts to this date under said contract Exhibit A, there is still due these defendants from this complainant the sum of $95.47, money collected by this plaintiff over and above all commissions, reductions, discounts, or bad debts, legal proceedings, or otherwise, and the expense of collecting the same, and the plaintiff is now indebted to these defendants in the sum of $95.47, growing out of transactions and sales of rakes in the New England territory under said contract Exhibit A up to September, 1894.' "

That part of the answer objected to here (that is, in the fourteenth exception) does not purport to be a response to the allegation of the bill mentioned in said exception. Moreover, said allegation is simply to the effect that the transactions set forth in the bill form a connected series, which involve a continuous accounting. It will be observed that this allegation does not pretend to assert anything in regard to the particulars of the transactions, nor call for any answer from the defendants as to such particulars. The answer proceeds upon the theory, and avers, substantially, if not in terms, that the transactions referred to are a connected series, involving a continuous accounting. Thus far it meets fully the charge of the bill. The other matters, namely, partial settlements in the fall months of each year, and the final balancing of all accounts up to September, 1894, with its result, are new and affirmative, and not subject to exception. 1 Enc. Pl. & Prac. 898. Therefore, treating that part of the answer now under consideration as a response to the allegation in question, it is not only sufficient, but contains more than the allegation calls for.

That part of the answer to which the first exception for impertinence relates is as follows:

"The defendants, for a third and separate defense to the cause of action alleged in the repleaded bill of complaint, allege, on information and belief, that

on or about the 8th of September, 1895, that the plaintiff and these defendants, together with one John E. Myer, a member of the firm of Patten, Stafford & Myer, to which the defendants are successors, entered into a contract, a copy of which is attached to the complaint, and marked 'Exhibit A,' and made a part hereof, as though fully set out herein; that in and by said contract the complainant agreed to become the agent of the defendants, in and for the territory of the states of Maine, New Hampshire, Vermont, Massachusetts, Rhode Island, and Connecticut, for the sale of harrows, hay rakes, and to thoroughly canvass, by himself or by subagents, the said territory, and to use his best possible endeavors to sell said hayrakes, and to take all possible precautions to sell to responsible parties only; and that said Whittemore entered upon the performance of said contract, and continued for a time to perform the same; and that in the year 1892 this complainant abandoned the territory in which he had the right to sell and agreed to sell horse hayrakes under the contract Exhibit A, and removed to the state of California; and that while the defendants were led to believe by the plaintiff, and did believe, that the plaintiff would return and take up the work under the contract in the New England States, and notwithstanding this expectation, the plaintiff neglected to return, and never has returned, to take up the work in said territory, as provided by said contract Exhibit A, but turned the same over to one G. E. Bryant, of Knox, Maine, who had no practical experience with the trade, and was young in years and in business experience, and did not have the requisite skill and experience to handle the trade in the territory, which the long experience and skill of the plaintiff would enable him to do in the same territory, and in consequence of lack of attention, and the plaintiff not using his best endeavors to sell all of such rakes that he could in said territory of the New England States, and the plaintiff not canvassing thoroughly the said territory, as provided by said contract Exhibit A, defendants' business in said territory was greatly curtailed, hampered, injured, and damaged, to the extent of $2,000, at least. These defendants further allege, upon information and belief, that had the plaintiff used his best endeavors to thoroughly canvass the territory of the New England States, as agreed by said contract Exhibit A, and as he was in duty bound to do under said contract, and sell all of the rakes that he could, that the defendants' business would have been largely increased in said territory, and the defendants would have received at least $2,000 more profits from sales of rakes in said territory during the year 1892 than they did receive from said territory, on account of the want of attention and the neglect of this plaintiff."

The matters and things set up in the third subdivision of the answer above quoted constitute a purely legal demand, and therefore are not proper in an answer to a bill in equity. Lautz v. Gordon, 28 Fed. 264; Story, Eq. Pl. § 398; 5 Enc. Pl. & Prac. 645–647. Moreover, if said matters were of equitable cognizance, since affirmative relief is sought on account of them they are pleadable only in a cross bill. The supreme court of the United States has said that:

"A cross bill is proper whenever the defendants, or any or either of them, have equities arising out of the subject-matter of the original suit which entitle them to affirmative relief which they cannot obtain in that suit." Kingsbury v. Buckner, 134 U. S. 650–658, 10 Sup. Ct. 638; 2 Daniell, Ch. Pl. & Prac. (6th Ed.) p. 1550, with citations made in note 2; 5 Enc. Pl. & Prac. p. 632; Langd. Eq. Pl. § 125; Story, Eq. Pl. § 389.

That part of the answer objected to by the second exception for impertinence is as follows:

"The defendants, further answering, allege that the alleged cause of action in the bill of complaint accrued in the state of New York, and relates to matters within the state of New York, and the Eastern states of the United States; that the complainant has brought this action in the state of California for the purpose of harassing these defendants, and involving them in a large amount of expense for traveling expenses and attor-

ney's fees necessitated in defending this suit at such a great distance from the point where the alleged contract was made, and the business was to be carried on and transacted under said contract; and the defendants allege that the complainant has brought this suit in this court in the state of California with a view of harassing them and embarrassing them in the defense of the suit, and pursuant to threats and declarations so to do, made a long time previous to the commencement of the suits, and that, in carrying out such threats and unjust and inequitable procedure, the complainant has caused an attachment to issue against property sold by the defendants in the state of California, and the proceeds growing out of said sales."

The matters set up in this last quotation are foreign to any issue in the case. The fourteenth exception will be disallowed, the others will be allowed.

## Supplement to Opinion of the Court on Exceptions to the Answer.

### (November 22, 1897.)

The fourteenth exception was for insufficiency only, and my ruling on said exception announced in the opinion heretofore filed relates exclusively to that ground of the exception. In view of what is elsewhere said in that opinion, however, as to the necessity for a cross bill where affirmative relief is sought, it should have been further stated, in connection with the fourteenth exception, that the matters set forth in that part of the answer to which said exception relates are not such as require a cross bill. A suit for accccounting is peculiar, in this: that if it finally appears, from the account taken, that the balance is in favor of the defendant, the court will give him a decree for the amount thus found to be due him, without a cross bill. 1 Fost. Fed. Prac. § 171; 1 Enc. Pl. & Prac. 99. Such balance, therefore, is pleadable in an answer.