[ALYWIN, PLAINTIFF, *v.* MORLEY ET AL., DEFENDANTS.    MOR-
LEY ET AL., APPELLANTS, *v.* CONROY, RESPONDENT.

(No. 2,816.)

(Submitted April 7, 1910.    Decided April 25, 1910.)

[108 Pac. 778.]

*Accounting—Counterclaim    Against    Codefendant—Pleading—
Judgments—Contracts—Construction—Appeal—Parties.*

Contracts—Ambiguity—Construction.
    1.    Where a contract on its face is ambiguous and uncertain, it must
    be construed in the light of all the surrounding facts and circum-
    stances bearing upon the transaction.
Equity—Findings—Review.
    2.    A finding of the district court, in an equity case, which is sup-
    ported by substantial testimony, will not be disturbed on appeal.
Accounting—Who may not Claim.
    3.    One who has not made a demand for an accounting may not, and
    one who knows exactly the amount claimed to be due him has no·
    occasion to, invoke the aid of a court of equity for an accounting.
Pleadings—Cross-bills.
    4.    Under the Code practice there is no such pleading in this state·
    as a cross-bill.
Accounting—Counterclaims Against Codefendant—Pleading.
    5.    *Quaere:* In view of the fact that section 6541, Revised Codes,.
    defining a counterclaim, makes no mention of a claim by one de-
    fendant against another, may a defendant obtain affirmative relief·
    against a codefendant, under the Code practice, in an action for an
    accounting, by filing a pleading in the nature of a counterclaim?
Same—Case Made as Between Defendants—Pleadings—Insufficiency.
    6.    Plaintiff brought an action for an accounting.    The facts stated·
    in his complaint were upon trial found to be untrue, and his action·
    was dismissed.    One of defendants filed an answer asking for an ac-
    counting against her codefendants. · This pleading was insufficient in
    that she had never made any demand for an accounting.    She ob-
    tained judgment as prayed.    *Held,* that the court erred in granting·
    the relief thus asked, in that, assuming that *where plaintiff has and·
    states a cause of action* for an accounting, the court may, in· order to
    avoid. a multiplicity of suits, determine the whole controversy, settle
    the rights of the defendants *inter sese* and grant one defendant af-
    firmative relief against a codefendant even though his answer may be·
    insufficient to support a judgment, the allegations of plaintiff's com-
    plaint which he failed to substantiate had become so much surplusage,
    and, the defendant's pleading having proven insufficient, there therefore·
    was not *any* pleading to sustain the decree.  ·
Appeal—Necessary Parties.
    7.    Where, in a suit for an accounting, a defendant obtained a judg-
    ment against two codefendants, who appealed therefrom, the plaintiff,
    as to whom the complaint was dismissed, and the remaining defend-
    ant, were not necessary parties to the appeal.

*Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

ACTION by F. P. Alywin against E. A. Morley and others. From a judgment for defendant Estella Conroy against E. A. Morley and another, and from an order denying them a new trial, the latter appeal. Reversed and remanded.

In behalf of Appellants, there was a brief by *Messrs. Kremer, Sanders & Kremer,* and oral argument by *Mr. Bruce Kremer.*

The appellants contend that the separate answer of Estella Conroy did not contain a statement of facts sufficient to warrant the granting of the relief prayed for therein, or to warrant the court in making its finding and rendering its judgment and decree herein in favor of the defendant Conroy and against the defendants Morley and Bornholdt. It is in the nature of a cross-complaint against the defendants Morley and Bornholdt, and must state a cause of action, or the proceedings cannot be maintained by her. The essential averments to entitle her to an accounting are not contained therein. (See 1 Ency. of Pl. & Pr. 98; 1 Current Law, 14; 1 Cyc. 436, 437; *White* v. *Cook,* 51 W. Va. 201, 90 Am. St. Rep. 775, 41 S. E. 410, 57 L. R. A. 417; *Eisner* v. *Eisner,* 38 N. Y. Supp. 671; *Clinton Co.* v. *Schuster,* 82 Ill. 137; *Kaston* v. *Paxton,* 46 Or. 308, 114 Am. St. Rep. 871, 80 Pac. 209; *Eccard* v. *Brush,* 48 Mich. 3, 11 N. W. 756; *Everett* v. *De Fontaine,* 78 App. Div. 219, 79 N. Y. Supp. 692; *Hulsey* v. *Walker County,* 147 Ala. 501, 40 South. 311.) It is further insufficient to warrant the affirmative relief, because it does not allege a demand and refusal to account. (*Wetzstein* v. *Boston & M. C. C. & S. M. Co.,* 28 Mont. 451, 72 Pac. 865; *Ayotte* v. *Nadeau,* 32 Mont. 515, 81 Pac. 145.) The mere recital of the fact that a party is entitled to something cannot be construed to be equivalent to an allegation of indebtedness; and an allegation of indebtedness is necessary. (*Volmer* v. *McCauley,* 7 Phila. 382; *Metz* v. *Farnham,* 8 Phila. 267.) All that the pleading alleges in this

behalf is that notwithstanding her repeated demands for an accounting, these appellants have not accounted, and will not. Instead of asserting that "notwithstanding her repeated demands," etc., defendant may as well have alleged that "whereas she had repeatedly demanded," etc., and such allegation would have come squarely within the condemnation of such pleading by Mr. Bliss in his work on Code Pleading, section 318. The same principle might be applied to the attempted allegation in paragraph 3, reciting that "by virtue of the profits," etc.

The authorities unanimously condemn such pleading. (See *Indianapolis etc. Co.* v. *Foreman,* 162 Ind. 85, 102 Am. St. Rep. 185, 69 N. E. 669; *Delaware County Nat. Bank* v. *King,* 109 App. Div. 553, 95 N. Y. Supp. 956; *Malott* v. *Sample,* 164 Ind. 645, 74 N. E. 245; *Ilfeld* v. *Zeigler,* 40 Colo. 401, 91 Pac. 825; *Groton* v. *American Bridge etc. Co.,* 151 Fed. 871; *Leadville etc. Co.* v. *Leadville,* 22 Colo. 297, 45 Pac. 362; *Southern Ry. Co.* v. *Elliott,* 170 Ind. 273, 82 N. E. 1051.)

*Messrs. Maury & Templeman,* and *Mr. J. O. Davies,* submitted a brief in behalf of Respondent. *Mr. J. L. Templeman* argued the cause orally.

Is defendant Conroy's answer sufficient in law to support the judgment in her favor? We think so. The settled practice in this sort of a case is that the answer of the defendant need not meet the requirements of a complaint for an accounting to support an accounting and a judgment in the defendant's favor. (Street's Federal Equity Practice, sec. 1026.) We freely concede that the bill or complaint for an accounting should contain the particulars pointed out in counsel's brief, but seemingly, the logical point here would be, "Does the plaintiff's complaint state a cause of action for an accounting?" rather than, "Is defendant's answer sufficient to support a judgment?" Since the judicial reasoning is that upon the bill for an account by one partner against his copartner, after the termination of the partnership, if a balance is found against complainant in favor of defendants or any of them, a decree

may be entered in favor of such defendants upon the plaintiff's bill. (*Raymond* v. *Came,* 45 N. H. 201.)

The trial court in this case, having jurisdiction of both the subject matter and the parties interested, concluded to, and did, determine the whole controversy once and for all—if conformable to the views of this court. The court was justified in so doing, by section 6498, Revised Codes. (See, also, *Vierra* v. *Fontes,* 135 Cal. 126, 66 Pac. 241.)

We concede that, as a general rule, a cross-bill is necessary to entitle a defendant to affirmative relief, but a suit for an accounting is the exception to the rule. (1 Am. & Eng. Ency. of Law & Pr. 755; see, also, *Wilcoxon* v. *Wilcoxon,* 199 Ill. 244, 65 N. E. 229; *Trapnall* v. *Byrd,* 22 Ark. 10; *Craig* v. *Chandler,* 6 Colo. 543; *McKaig* v. *McKaig,* 50 N. J. Eq. 325, 25 Atl. 181; *McKee* v. *Dail,* 1 Tenn. Ch. App. 689; *Little* v. *Merrill,* 62 Me. 328.)

MR. JUSTICE SMITH delivered the opinion of the court.

On the thirty-first day of July, 1907, the plaintiff brought this action in the district court of Silver Bow county against the above-named defendants, and in his complaint he alleges that in the month of May, 1904, he, together with J. R. Davenport, E. A. Morley, and Mrs. Minnie Bornholdt, entered into an agreement wherein they became mining copartners for the purpose of carrying on a leasing business on what was known as the tailings dump of the smelter plant of the Parrot Silver and Copper Company; that Morley had secured a lease or privilege to work the tailings and extract the valuable metals therefrom, and said lease or privilege became the property of the copartnership; that each of the parties owned a one-fourth interest in the copartnership; that Morley assumed and took active charge of the operations, and looked after the shipment and sale of the precipitates on behalf of the association; that, after conducting the business for some time, Davenport sold and conveyed his interest to the defendant Estella Conroy, and she became, by common consent of all the parties, a copartner

in the business; that the agreement of copartnership entered into between the parties is as follows:

"Butte, Montana, May 25th, 1904.

"Whereas, E. A. Morley has secured a lease from the Parrot Silver & Copper Company for the handling of the tailings at their smelting plant, and,

"Whereas, the said E. A. Morley proposes to enter into an agreement with J. R. Davenport and others for the erection of a precipitating plant at the above-mentioned tailings dump,

"It is hereby agreed between E. A. Morley and J. R. Davenport that the said J. R. Davenport is to furnish sufficient funds for the erection of a plant to be mutually agreed upon.

"It is also understood and agreed that the said J. R. Davenport is to be reimbursed for his outlay in the erection of the plant from the first clean-ups of precipitates. In consideration of this outlay the said J. R. Davenport is to receive one-fourth (¼) interest in the net proceeds of the proposition, and is to have a voice in matters pertaining to the operation of the plant according to his holdings.

"The above mentioned E. A. Morley and others have made an outlay of about $500 in the erection of a plant on the above-mentioned grounds, a portion of which will be used in the plant to be constructed, and it is understood and agreed that the said E. A. Morley and his associates are to be reimbursed from the first clean-ups the full amount of their outlay.

"It is also understood and agreed that F. P. Alywin and Mrs. Minnie Bornholdt are each a one-fourth (¼) owner in the above-mentioned lease and are parties of the above contract and agreement.

"[Signed] E. A. MORLEY.
"J. R. DAVENPORT.
"MRS. MINNIE BORNHOLDT.
"FRANCIS P. ALYWIN."

Plaintiff further alleges that before the commencement of the action the defendants Morley and Bornholdt excluded him from any participation in the business, and denied that he had any

rights therein; that on the twenty-fourth day of December, 1906, he demanded of all of the defendants a full, true and detailed account of the receipts and expenditures, and of all things pertaining to said leasing and precipitating business, and demanded a complete accounting and settlement of all of its affairs, and payment of any moneys due him therefrom, but that said demand has been refused. The complaint then alleges that the copartnership realized a large amount of money from the precipitating business in which it was engaged, and that Morley and Bornholdt converted the greater part thereof to their own use. An accounting is prayed for.

The separate answer of the defendant Estella Conroy reads as follows:

"Comes now the defendant Estella Conroy, above named, and for her separate answer to the complaint of plaintiff on file herein alleges:

"(1) That this defendant is now, and ever since the 15th day of September, 1905, has been, a copartner with the plaintiff Alywin, above named, and E. A. Morley and Minnie Bornholdt of the defendants, above named, in and to that certain leasing business more particularly specified and set out in the complaint of the plaintiff on file herein and owning in said business a one-fourth interest therein.

"(2) That, notwithstanding her repeated demands from the defendants Morley and Bornholdt for an accounting in said business, the said Morley and Bornholdt have not accounted to her and will not account to her.

"(3) That the copartnership in said business has not been settled, and that this defendant is entitled to the sum of one thousand ($1,000) dollars from the defendants Morley and Bornholdt aforesaid by virtue of the profits accruing from said partnership business and to other sums.

"Wherefore, this defendant prays for an accounting on said partnership business, and for judgment against such of the parties hereto in such an amount as her right and interest shall appear, and for such other and further equitable relief as she may be entitled to in the premises."

The defendants Morley and Bornholdt by their separate answer denied that Davenport was ever a partner in the business; denied that the privilege of working the tailings of the Parrot Company ever became an asset of any copartnership in which the plaintiff was a member; denied that either the plaintiff or Davenport ever owned a one-fourth interest in any property belonging to the association; admitted that Davenport sold his interest in the association to Estella Conroy; denied that the agreement between the parties, as set forth in the complaint, constituted a copartnership agreement or was ever intended as such. They alleged that on the fourteenth day of May, 1904, Morley and Bornholdt entered into a contract in writing with plaintiff as follows:

"AGREEMENT.

"Whereas, E. A. Morley has secured a lease from the Parrot Silver & Copper Company for the handling of the tailings at their smelter in Butte for profit, and;

· "Whereas, F. P. Alywin has a process for leaching and precipitating which he claims can be used with success on the tailings above mentioned;

"Now, therefore, for and in consideration of the knowledge and use of said process, the said E. A. Morley hereby agrees to pay over to the said F. P. Alywin one-third of the net proceeds of the working of said tailings under the process put into use by the said F. P. Alywin.

"It is further understood and agreed that, should the process not prove profitable, the said F. P. Alywin is to stand one-third of the expense of putting in the plant and making the test.

"Signed and sealed the day and date above written.

"[Signed] E. A. MORLEY.<br>
"F. P. ALYWIN.<br>
"MRS. MINNIE BORNHOLDT."

They then alleged that, pursuant to the provisions of the said contract, Alywin undertook to demonstrate and make a success of his alleged process for leaching; that Morley and Bornholdt

advanced the sum of $700; that the process was a complete failure; that thereupon Alywin stated that he could procure a party to advance the money necessary for the erection and construction of a precipitating plant, and Morley and Bornholdt then agreed that, if he would procure such a party and devote his entire time and attention to the operation of the plant and make it a success, they would allow him to participate in the net profits of the plant substantially on the terms set out in the agreement last quoted; that Alywin agreed to this, and, pursuant thereto, sent the defendant Davenport to Morley's office for the purpose of entering into an arrangement; that "thereupon these answering defendants made to the said Davenport two propositions, namely, one proposition that he should put into the enterprise the sum of $2,000, and by the payment of said sum should be entitled to a one-fourth interest in the entire enterprise, and a second proposition that he should pay into the concern $2,000 for the erection of a plant, which said sum should be repaid to him, and thereafter he should receive one-fourth of the net profits of the precipitating plant, and should have no further interest in the enterprise except in the net profits of the operations thereof; that the said Davenport accepted the latter proposition, and thereupon the instrument set out in the complaint was drawn up by the defendant Morley"; that the parties to the first agreement always understood that Alywin's interest was contingent upon success and upon his continued operation of the plant, and that, in the event of his quitting the said plant at any time, his interest would cease; that on or about the tenth day of September, 1904, said Alywin quit and abandoned said enterprise, and then and there stated that he had no further interest in the said plant or in said enterprise. It is then alleged that on or about July, 1904, Alywin sold his interest in the enterprise to Davenport, and Morley afterward bought the interest from Davenport.

For replication the plaintiff denied each and every allegation of the amended answer. As a separate answer to the affirmative matter set forth in the answer of Estella Conroy, the defendants Morley and Bornholdt denied that Conroy had any interest

in the enterprise except a one-fourth interest in the net profits thereof. They denied that she was ever a copartner, denied that she had ever made a demand for an accounting, or that either of the defendants had ever failed or refused to account to her, but, on the contrary, they alleged that she had received from them all that she was entitled to under the agreement. They denied that she was entitled to the sum of $1,000 or any other sum as set forth in her answer. They then alleged affirmatively "that, before the said Estella Conroy procured any assignment of any interest whatever in the net profits of the operation of said plant or any assignment whatever from said Davenport, she was fully informed by these answering defendants as to the right of said J. R. Davenport in the net profits of the operation, and fully understood and agreed to all the matters hereinabove alleged as to the rights of the said Davenport, and agreed that, in the further operation of the said plant, she was to participate in the net profits of the operation of such plant to the extent of one-fourth of said net profits, and had no interest whatever in the plant; that thereafter, to-wit, on the fifteenth day of June, 1906, an account was stated, settled, and agreed upon by and between Estella Conroy, acting by her duly authorized agent, J. H. McQueeney, and the defendant Morley, relative to all matters pertaining to the operation of said plant under said contract referred to, and thereupon the said defendant Estella Conroy, by her duly authorized agent, acknowledged full settlement and satisfaction of all claims and demands which she had or claimed to have against these answering defendants Morley and Bornholdt." This latter allegation was put in issue by a further answer on the part of Estella Conroy.

The cause was tried to the district court of Silver Bow county sitting without the aid of a jury. The following findings of fact were made:

"(1) That on the fourteenth day of May, 1904, the plaintiff, F. P. Alywin, and the defendants E. A. Morley and Mrs. Minnie Bornholdt, entered into an agreement to operate a precipitating copper plant at the tailings of the Parrot smelter and to divide

the net profits, if any, arising from such operation equally amongst them.

"(2) That immediately thereafter the three persons named began the erection of said precipitating plant, and completed it on or before May 25, 1904.

"(3) That on the twenty-fifth day of May, 1904, the plaintiff, F. P. Alywin, and the defendants E. A. Morley, Mrs. Minnie Bornholdt, and J. R. Davenport, entered into a contract, whereby it was agreed that the said Davenport should furnish sufficient money to build a new precipitating copper plant at the tailings of the Parrot smelter, and should be reimbursed from the first net proceeds of the precipitating business. That the said Alywin, Morley and Bornholdt had expended the sum of about $500 in the erection of the old plant, and should also be reimbursed from the first net proceeds of the said precipitating business, and that each of the four persons named should have a one-fourth interest therein.

"(4) That the said Davenport furnished the money, to-wit, the sum of $2,000, with which to build the new plant, and the same was built at and near the site of the old plant between the twenty-fifth day of May, 1904, and the fifteenth day of June, 1904, and was operated continuously from its completion to the twenty-ninth day of May, 1906.

"(5) That the plaintiff was placed in charge of the said plant as foreman, and continued so in charge until on or about the tenth day of September, 1904, when he was discharged by the defendants Morley and Bornholdt for want of attention to the duties of his position.

"(6) That on the first day of June, 1904, the plaintiff mortgaged to the defendant Davenport his interest in said business to secure loans made in the past and to be made in the future by the latter to the former.

"(7) That on or about the tenth day of September, 1904, the plaintiff abandoned said business, left the state of Montana, and ever since has resided outside the state of Montana, and during the continuance of said business thereafter took no interest in or paid any attention to it.

"(8) That from the twenty-fifth day of May, 1904, to on or about the tenth day of September, 1904, the said business did not pay, and no profits were derived from the operation of said plant.

"(9) That on the twenty-third day of November, 1904, J. R. Davenport sold and assigned to E. A. Morley all his title and interest in and to Alywin's interest in said business.

"(10) That on the fifteenth day of September, 1905, J. R. Davenport sold to the defendant Estella Conroy, with the consent of the said Morley and Bornholdt, his interest in said business and plant, and thereafter the said Conroy held said interest upon the same terms and [as?] the said Davenport had held it.

"(11) That on or about the twenty-ninth day of May, 1906, the said plant was sold for the sum of $4,000, and thereafter, so far as the parties hereto are concerned, the business of producing copper from precipitation ceased.

"(12) That the gross receipts of said business from the twenty-fifth day of May, 1904, to the twenty-ninth day of May, 1906, amounted to the sum of $48,664.40, and the total expenses to the sum of $30,556.90.

"(13) That the net profits of said business, amounting to the sum of $18,107.50, were from time to time divided equally among E. A. Morley, Mrs. Minnie Bornholdt, J. R. Davenport, or his successor in interest, Estella Conroy, and one John W. Thomas. That the sum derived from the sale of said plant was divided between E. A. Morley and Mrs. Minnie Bornholdt, and that Estella Conroy received no part thereof."

The court also drew the following conclusions of law: "(1) That the plaintiff, F. P. Alywin, and the defendants E. A. Morley and Mrs. Minnie Bornholdt, were copartners from the fourteenth to the twenty-fifth day of May, 1904.

"(2) That the plaintiff, F. P. Alywin, and the defendants E. A. Morley, Mrs. Minnie Bornholdt, and J. R. Davenport, became copartners on the twenty-fifth day of May, 1904, and continued to be such until on or about the tenth day of September, 1904.

"(3) That on or about the tenth day of September, 1904, the partnership as to F. P. Alywin was dissolved.

"(4) That, as to E. A. Morley, Mrs. Minnie Bornholdt, and J. R. Davenport, the partnership continued until the fifteenth day of September, 1905, when Estella Conroy took the place of J. R. Davenport therein.

"(5) That E. A. Morley, Mrs. Minnie Bornholdt, and Estella Conroy continued to be copartners until the twenty-ninth day of May, 1906, when the partnership was dissolved.

"(6) That the plaintiff is not entitled to an accounting from the defendants or either of them.

"(7) That the defendant Estella Conroy is entitled to an accounting from the defendants E. A. Morley and Mrs. Minnie Bornholdt to receive from them one-fourth of the selling price of said plant, to-wit, the sum of $1,000, and to have judgment against them for said sum.

"(8) That the appearing defendants are entitled to a judgment of dismissal against the plaintiff and for their costs expended."

And afterward the court made and filed the following decree: "It is ordered and adjudged that as to the plaintiff, F. P. Alywin, the complaint be dismissed upon the merits of the suit, and that the defendant Estella Conroy do have and recover from the defendants E. A. Morley and Minnie Bornholdt the sum of $1,000." From this decree and an order denying them a new trial, the defendants Morley and Bornholdt have appealed to this court.

1. It is contended on the part of the appellants that the language employed by the parties in the agreement, which is denominated by the plaintiff and by the defendant Conroy a partnership agreement, is plain and free from ambiguity, and that its clear meaning is that Davenport was to have simply a one-fourth interest in the net profits of the enterprise, and therefore defendant Conroy had no interest whatsoever in the sum of $4,000, realized by Morley from a sale of the plant to the Parrot Company. So far as the record discloses, there is no controversy between the parties to this appeal over any of the

profits of the business as such, but the sole question is whether Conroy, through Davenport, acquired a one-fourth interest in the proceeds of the sale of the plant. The district court held that she did, and this is the main point in controversy between the parties. It is argued on the part of the appellants that, when the parties agreed that Davenport was to have a voice in matters pertaining to the operation of the plant according to his holdings, he tacitly acknowledged that without such provision he would not have any voice in the operation of the plant, on account of the fact that his interest pertained solely to the profits; and it is further argued that if, as is now claimed by the defendant Conroy, Davenport secured at that time a one-fourth interest in the entire enterprise, it would have been wholly unnecessary to provide that he should have a voice in the matter of the operation, because of the fact that his partnership interest would give him such voice without special agreement. On the other hand, it is maintained by the respondent Conroy that the phrase "net proceeds of the proposition" includes not only net profits, but also includes a one-fourth interest in whatever sums were derived from the venture, either in the way of profits or upon a final sale of the property. We have given this clause of the contract a great deal of thought and consideration. The language employed is somewhat peculiar. On the one hand, it may be argued that, if the intention was to give Davenport simply a one-fourth interest in the profits, it would have been very easy to have said so; on the other hand, if he was to become equally interested with his associates in the entire venture, including the plant, there would have been no difficulty whatever in simply declaring that fact. We cannot avoid the conclusion that the contract on its face is ambiguous and uncertain; that its meaning is not clear. This being the case, it was the duty of the district court to construe it in the light of all the surrounding facts and circumstances bearing upon the transaction. In other words, it became the duty of the court to place itself, as near as might be, in the situation occupied by the parties at the time they entered into the agreement. There is positive testimony on the part of

Morley and Bornholdt that the agreement with Davenport was as set forth in their separate answer; that is to say, that they gave him his option to allow his money to be permanently invested, and receive as consideration therefor a one-fourth interest in the whole enterprise, or to withdraw the amount advanced by him from the first proceeds of the sale of precipitates, and take simply a one-fourth interest in the net profits of the concern. This testimony, if uncontradicted, would have fully warranted the court in believing that the words "net proceeds of the proposition," as found in the written agreement, were intended to mean net profits. The testimony is clear, explicit and reasonable. However, J. R. Davenport, the other party to the agreement, declared that there was no such arrangement between the parties, that no such option was ever given, and that the understanding was that he was acquiring a one-fourth interest in the entire venture. The district court evidently credited the story told by Davenport, and discredited that of the appealing defendants. This is manifested by the findings of fact made by the court. Under these circumstances, there being substantial testimony to warrant the findings, this court cannot interfere with the result. (*Watkins* v. *Watkins,* 39 Mont. 367, 102 Pac. 860; *White* v. *Barling, ante,* p. 138, 108 Pac. 654; *Quirk* v. *Rich,* 40 Mont. 552, 107 Pac. 821.)

2. The record appears to disclose the fact that Mrs. Conroy was not present at the trial, either personally or by counsel. No evidence was offered in her behalf. It is significant that in her answer she claims the sum of $1,000 and other sums, not as a part of the proceeds of the sale of the plant, but "by virtue of the profits accruing from the partnership business." The plaintiff does not appear to have been personally at the trial. All of the testimony relating to the conditions under which the Morley-Bornholdt-Davenport contract was executed was introduced by counsel for the plaintiff, and by the defendants Morley and Bornholdt without objection. No objection could have been successfully interposed thereto, for the reason that the evidence was relevant to the controversy between those parties. So far as the record discloses, no demand was ever made for an account-

ing by the respondent, and no claim can now be made, in view of the findings of the trial court, that she is entitled to more than a share of the $4,000 received from the sale of the plant. The testimony shows conclusively, and the court by implication found, that all of the profits derived from the enterprise had been fully accounted for by Morley, and divided between the parties prior to the commencement of Alywin's action. Upon this state of facts, had the defendant Conroy commenced the action, she would undoubtedly have failed of relief in a court of equity for two reasons: (1) That she had never given Morley and Bornholdt an opportunity to account (see *Ayotte* v. *Nadeau,* 32 Mont. 498, 81 Pac. 145) ; and (2) that she knew exactly the amount claimed to be due her, to-wit, a certain percentage of $4,000, and therefore she had no occasion to invoke the aid of a court of equity. (See *Wetzstein* v. *Boston & Mont. C. C. & S. Min. Co.,* 28 Mont. 451, 72 Pac. 865.) The phrase, ''and to other moneys,'' found in her answer, is meaningless in the light of the findings. She made no effort to show that any other moneys were due her, and the findings disclose the fact that the only claim she could have was for a share of this $4,000. The record shows affirmatively that no accounting was necessary between these defendants. As the defendant Conroy failed to substantiate her allegation that she had demanded an accounting with her codefendants, and she alleged no necessity for an accounting, her answer, in the light of the findings, discloses simply a claim against them at law for $1,000. (See 15 Ency. of Pl. & Pr. 1031.)

Counsel for respondent freely concede in their brief that the bill or complaint for an accounting should contain the particular allegations contended for by the appellants; but they maintain that the real question is: ''Does the plaintiff's complaint state a good cause of action for an accounting?'' and not: ''Is the defendant's answer sufficient to support a judgment?'' They contend that, as the complaint is undoubtedly sufficient, it was the duty of a court of equity, after having once obtained jurisdiction, to do complete justice by determining the whole controversy so as to prevent future litigation and multiplicity of suits. They cite *Raymond* v. *Came,* 45 N. H. 201, *Vierra*

v. *Fontes,* 135 Cal. 126, 66 Pac. 241, section 20, Street's Federal Equity Practice, and section 6498, Revised Codes, in support. of their position. They also say in their brief: "We concede that as a general rule a cross-bill is necessary to entitle a de-- fendant to affirmative relief, but opposing counsel fail to note, that a suit for an accounting is an exception to the rule." And. they cite 1 American and English Encyclopedia of Law and Practice, page 755, to this effect: "As a general rule, to entitle a defendant to affirmative relief, it is necessary that he file a. cross-bill. But in suits for an accounting, in order to entitle the defendant to credits for items in his favor in the account-- ing and a decree in his favor in case the balance on the account- ing is in his favor, a cross-bill is not necessary. * * * It, seems that an accounting may also be directed as between code- fendants and a decree entered settling their rights *inter se* with- out the necessity of a cross-bill. In such cases accountings are, only directed where a case is made out between the codefendants and is supported by the evidence." They also cite *Downes* v.. *Worch,* 13 Am. & Eng. Ann. Cas. 647, and note.

In this state there is no such pleading as a cross-bill. The, only fact pleading allowed on the part of the defendant is an answer (Revised Codes, sec. 6530), which must contain: (1) A. general or specific denial of each material allegation of the com-- plaint controverted by the defendant, or of any knowledge or information thereof sufficient to form a belief, or a specific ad- mission or denial of some of the allegations of the complaint,. and also a general denial of all the allegations of the complaint not specifically admitted or denied in the answer; (2) a state-- ment of any new matter constituting a defense or counterclaim.. (Revised Codes, sec. 6540.) Section 6541, Revised Codes, de- fines a counterclaim. No mention is made of a claim against a codefendant. Without deciding whether under our Code prac-- tice a defendant may obtain affirmative relief in an action for, an accounting by filing a pleading in the nature of a counter-- claim against a codefendant, we will assume that neither a cross-- bill nor an answer containing a counterclaim is a necessary, pleading on the part of a defendant against a codefendant in a.

case where the plaintiff has and states a cause of action. Relying upon this assumption, it may be said that the defendant Conroy's case was properly before the court for complete adjudication and relief against all other parties to the action at the beginning of the trial. It will, however, be conceded that the judgment in her favor must rest upon some proper pleading, either her own or that of the plaintiff. A judgment without a pleading to support it cannot stand; and this is the reason why the question whether a complaint states facts sufficient to constitute a cause of action is never waived and can be raised in this court for the first time.

The complaint of Alywin is, on its face, sufficient; but the facts therein stated are untrue in point of fact. The court so found. Therefore, if Alywin had, in his complaint, stated the facts as they actually existed, his complaint would not have set forth a cause of action. It has been judicially determined that he was not entitled to an accounting, and therefore the aid of a court of equity was improperly invoked by him. Those allegations of his complaint which he failed to substantiate became so much surplusage; and, the answer of the respondent being insufficient to state an affirmative cause of action for an accounting against the appellants, the decree has no pleading to sustain it. The respondent relied upon the ability of the plaintiff to make out a cause of action, at her peril. She should either have filed a proper pleading in her own behalf, if that can be done in an action like this—one upon which she could rely in case the plaintiff failed to make out a case—or she should have taken part in the trial and assisted Alywin in proving the allegations of his complaint. She did neither. The result is that, so far as the record discloses, she has a judgment against Morley and Bornholdt, without a pleading to support it, founded upon an alleged cause of action at law, in the final determination of the merits of which the appellants have a right to a trial by jury. This right could not be taken from them by an assertion on the part of the plaintiff, a third party, that he had a cause of action which he in fact did not have. If Alywin was not entitled to an accounting on the facts, and Mrs. Conroy was not entitled

to any on either her pleadings or the facts, then the cause should have been dismissed as to both.

In the case of *Schulz* v. *Schulz,* 138 Ill. 665, 28 N. E. 808, a father brought an action against his son to declare and enforce a resulting trust, for an account, and for a decree against defendant for any balance of money found due upon the accounting. At the hearing the complainant abandoned all claims for moneys due on an accounting, and asked for a decree respecting the real estate only. After a decree in favor of the complainant, the defendant in the supreme court contended that the cause should have been sent to the master to take and report an account. It was held that, as the defendant had filed no cross-bill, he was not entitled to any affirmative relief.

In the case of *Brewer* v. *Norcross,* 17 N. J. Eq. 219, which was an action for an accounting between partners, the defendant asked to have the affairs of another and different partnership between the same parties examined and settled. The court said: "If the balance upon the settlement of the account, in respect to which the bill is filed, should prove to be in favor of the complainant, but, upon the settlement of both accounts, the balance should be in favor of the defendant, what remedy could he have, or what decree could be pronounced upon the pleadings as they stand? If, in this aspect of the case, the defendant has any equity, he can have relief only by way of cross-bill."

In the case of *Wilcoxon* v. *Wilcoxon,* 199 Ill. 244, 65 N. E. 229, it was held, in effect, that the general rule that affirmative relief will not be granted a defendant unless he files a cross-bill, applies to a bill for dissolution of a partnership and an accounting, where one of the partners desires affirmative relief upon grounds other than that of an adjustment of the accounts of the partners.

The supreme court of Arkansas, in *Trapnall* v. *Byrd's Admr.,* 22 Ark. 10, said: "The law is well settled that a court of chancery will make a decree between codefendants according to the equity of the case as founded upon the pleadings and proof between the complainants and defendants, but will not make a decree between them as to a matter outside of the pleadings

and proof between the complainants and defendants, unless by cross-bill.''

We understand the rule to be in jurisdictions where the cross-bill is an appropriate pleading that one may be filed whenever the defendants, or either of them, have equities arising out of the subject matter of the original suit, which entitle them to affirmative relief which they cannot obtain in that suit (*Whittemore* v. *Patten* (C. C.), 84 Fed. 51); also, that in suits for an accounting a cross-bill is unnecessary in order to enable the defendant to recover the amount found due him upon the accounting, if the subject matter upon which he bases his claim for affirmative relief is the same as that set forth in the complaint or bill; but that whenever a defendant seeks affirmative relief, not based upon a case embodied within the issues tendered by the plaintiff, either by his pleadings or evidence, he must show his right thereto by appropriate pleadings in his own behalf. In this case the plaintiff failed to make out any cause of action. Therefore his entire case failed. His pleadings could no longer be considered. He was out of court. There was nothing in the case presented by him upon which to predicate a cause of action in favor of the respondent. Therefore her cause of action was necessarily beyond the scope of his case. It related to an independent matter, and must have had a pleading to support it in order to warrant the court in entering judgment in her favor. He demanded an accounting to which he was not entitled. She made no demand. The defendants were within their rights in refusing his demand. It seems, therefore, to follow that she may not predicate a right of recovery in this action upon the unwarranted demand made by him. A cross-demand cannot be germane to an alleged cause of action which has no existence in fact.

Whatever has been said in this opinion to the effect that the respondent's sole claim against the appellants was for a share of the moneys derived from the sale of the plant is not to be construed as a determination that such could have been her only claim. It is suggested in the brief of her counsel that she may have been entitled to a larger sum. But she is not an appel-

lant, and no exceptions on her part are found in the record. The district court seems to have found that the profits were properly divided. As she does not complain of these findings, we must assume that she is satisfied therewith. Hence the statement heretofore made that the amount allowed her is the full extent of her claim.

3. It is contended that the respondent's answer is insufficient for the reason that there is no proper allegation of the probative facts attempted to be set forth. There is apparently some warrant for the suggestion, but, in view of what has already been said, it becomes unnecessary to decide the question.

4. It is also suggested by counsel for the respondent that the association formed under the contract of May 25, 1904, was rather a "joint adventure" than a "copartnership." We do not decide the exact nature of the relation because it seems unnecessary to do so.

5. We are of opinion that neither Alywin nor Davenport was a necessary party to the appeal.

The judgment and order appealed from are reversed, and the cause is remanded to the district court of Silver Bow county.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.