WALDORF, RESPONDENT, *v.* PHILLIPS ET AL., APPELLANTS.

(No. 2,870.)

(Submitted September 16, 1910.  Decided October 15, 1910.)

[111 Pac. 546.]

*Corporations—Stock—Sales—Rescission—Want of Considera-tion—Evidence.*

Corporations—Stock—Sales—Rescission—Pleading.
    1.  A complaint to rescind a transfer of shares was sufficient, where it alleged that no consideration passed for the transfer, regardless of the sufficiency of allegations that the transfer was procured through duress, *etc.*

Appeal and Error—Review—Conclusiveness of Action in Trial Court.
    2.  Where the evidence is substantially conflicting, jury findings and the trial judge's refusal of a new trial are conclusive on the supreme court.

Corporations—Managers—Authority—Raising Own Salary.
    3.  Plaintiff's testimony that as manager of a corporation he had au-thority to raise his own salary established his right *prima facie* to do so, in the absence of any showing to the contrary.

Same—Shares—Sale—Rescission—Want of Consideration—Evidence—Suffi-ciency.
    4.  Evidence *held* to sustain a judgment rescinding a transfer of shares on the ground the transfer was without consideration.

*Appeal from District Court, Beaverhead County; Llew. L. Callaway, Judge.*

ACTION by A. F. Waldorf against William G. Phillips and another.  From a judgment for plaintiff, and from an order refusing a new trial, defendants appeal.  Affirmed.

*Mr. W. S. Barbour,* and *Messrs. Lamb & Walker,* submitted a brief in behalf of Appellants. *Mr. Lamb* argued the cause orally.

In behalf of Respondent, *Mr. Joseph C. Smith* filed a brief and argued the cause orally.

MR. JUSTICE SMITH delivered the opinion of the court.

The complaint in this action alleges that on the 20th of February, 1908, the plaintiff was the owner of 112 shares of the capital stock of the Dillon Implement Company, a corporation, of the par value of $100 per share and an actual value of $200 per share; that the defendants were also stockholders of said corporation, and the parties to this action constituted the board of trustees. The plaintiff was the manager and the defendants Phillips and Arntz were the president and vice-president, respectively. On February 20th the plaintiff executed the following instrument:

"EXHIBIT B.

"Agreement.

"Dillon, Montana, February 20, 1908.

"I, A. F. Waldorf, hereby sell and assign and transfer and deliver to William G. Phillips and Sam Arntz, 112 shares of stock in the Dillon Implement Company, a corporation, and being all the stock owned by me therein; I also agree to deliver to said Phillips and S. Arntz, all keys and other property in my possession the property of said company; I also agree to leave the city of Dillon and not return thereto and go to a competitive business with the Dillon Implement Company within the next five years.

"I also hereby tender my resignation to the said directors William G. Phillips and Sam Arntz as both a director in said corporation and resign at once as manager thereof.

42 Mont.—6

"All done in consideration of the sum of one dollar and other valuable consideration understood between the said Waldorf and Phillips and Arntz. My resignation to take place at once.

"[Signed]    A. F. WALDORF."

And the parties hereto made and executed the following instrument:

"EXHIBIT A'.

"Dillon, Montana, February 20, 1908.

"We, William G. Phillips and S. Arntz, hereby agree to and with A. F. Waldorf, that in case the Dillon Implement Company as a corporation is not insolvent at this time from the acts of the said Waldorf, and in case the said company is not financially swamped and we can continue business after the said Waldorf transfers his stock to us for a valuable consideration, and the representations made by the said Waldorf to us about the business of said corporation are true in so far as the said company is indebted for oats, and other things and we can from the business of the concern pay to said Waldorf personally the sum of one thousand dollars, at such times and such amounts as we can afford to pay, and within such time as we can determine the truth or falsity of the above conditions.

"And we further agree that in case we find the condition of the said corporation all that the said Waldorf represents, and we are permitted by our creditors to run for over one year and we can see our way clear out of the financial embarrassment now surrounding said company, we will pay to him said Waldorf such sums in addition to said $1,000 as we can afford to do, all things considered.

"This is done to settle all matters in dispute and stop all trouble and actions at law.

"[Signed]    W. G. PHILLIPS.
"SAM ARNTZ.
"A. F. WALDORF."

It is further alleged in the complaint as follows: "That on the twentieth day of February, 1908, Exhibits A and B were

made and the one hundred and twelve shares of stock were assigned and delivered by plaintiff to the defendants under and by virtue of threats of arrest, prosecution, and imprisonment, by, on the part of, and at the instigation of the said defendants, upon the charge of embezzling and misappropriating the funds and property of the Dillon Implement Company, and not otherwise; that except for and on account of the said threats of arrest, prosecution, and imprisonment of the plaintiff, then and there made by the defendants, and the fear of disgrace incident to such arrest, prosecution, and imprisonment of the plaintiff, then and there had by the plaintiff, this plaintiff would not have made, executed, and delivered the said instruments alleged and purporting to be contracts, or the one hundred and twelve shares of stock; that the said charges were false, scandalous, and untrue, and the threats of arrest, prosecution, and imprisonment of the plaintiff by the defendants were made solely for the purpose of cheating and defrauding this plaintiff of his said shares of stock; that said instruments were not executed by the plaintiff as his free and voluntary act or acts, deed or deeds, and said instruments were signed, executed, and delivered under and by virtue of the direct and positive menace of the plaintiff on the part of the defendants; that the defendants did not pay, and have not paid, or caused to be paid, to the plaintiff, and the plaintiff has not received of or from the defendants, or either of them, or for or from any person or persons for or on their account, any consideration whatever for the making, execution, and delivery of the purported contracts, or for the assignment and delivery by him to the defendants of the said one hundred and twelve shares of stock.''

There is another cause of action stated in the complaint, which does not concern us at this time. The prayer is that the defendants be required to return and redeliver to plaintiff the shares of stock of the Dillon Implement Company; that the pretended contracts be declared null and void; and that the defendants account to the plaintiff for any income received by them from the shares of stock.

To the complaint a general demurrer was interposed and over-ruled. Whereupon the defendants answered, putting in issue all of the material allegations of plaintiff's pleading. The cause was tried to the district court of Beaverhead county, sitting with a jury. The following special findings were made:

"No. 1. Was there any consideration as a basis for the transfer by plaintiff to the defendants of the one hundred and twelve shares of stock in question? A. No.

"No. 2. Were the instruments designated as Exhibits A and B executed, and was the assignment and transfer of the one hundred and twelve shares of stock in question by the plaintiff to the defendants made and done by the plaintiff while acting under and by virtue of menace exercised by the defendants toward the plaintiff? A. Yes."

The following general verdict was also returned: "We, the jury in the above-entitled action, find the issues for the plaintiff." The court approved the special findings of the jury and further found that the assignment and transfer of the stock by plaintiff to defendants was made without consideration and under and by virtue of menace exercised by the defendants upon the plaintiff. A judgment was entered directing the defendants to return the shares of stock to the plaintiff and to account to him "for any income received by them from the said one hundred and twelve shares of stock since the twentieth day of February, 1908." From this judgment and an order denying them a new trial, the defendants have appealed.

Only two questions are raised in the brief of appellant's counsel: (1) Does the complaint state facts sufficient to constitute a cause of action? And (2) is the evidence sufficient to support the judgment? A considerable part of their brief has been devoted by counsel to a discussion of the question whether the complaint states facts sufficient to show that the plaintiff was induced to sign the contracts hereinbefore set forth by reason of duress, menace, fraud, or undue influence practiced upon him by defendants. It will readily be seen, however, that this question is not necessarily involved upon the appeal. In addition

to those allegations wherein an attempt is made to show that the consent of the plaintiff to the contracts was not real or free, we find a distinct and categorical allegation to the effect that no consideration whatever passed to the plaintiff for the transfer of his stock. No attack is made upon this feature of the complaint. It may be that two causes of action have been improperly united; but, if so, the pleading discloses a merely technical variation from the course that should have been pursued, and the record shows that the cause was tried upon the theory that both issues were distinctly and properly presented. We think that, viewed in this light, the complaint unquestionably states a cause of action based upon the allegation of entire want of consideration for the transfer. Indeed, as we read the brief of counsel, it is not contended that the complaint is insufficient to state such a cause of action.

2. Confining our attention, then, to the cause of action which is clearly stated in the complaint, we find that the jury decided the issue of fact therein involved in favor of the plaintiff. Finding No. 1 is to the effect that there was not any consideration for the transfer of the shares of stock. This finding was approved by the court and supplemented by another to the same effect, and afterward the learned district judge overruled a motion for a new trial. Where the evidence presents a substantial conflict, the findings of the jury and the action of the district judge in denying a motion for a new trial are conclusive upon this court. (*Alywin* v. *Morley,* 41 Mont. 191, 108 Pac. 778; *Watkins* v. *Watkins,* 39 Mont. 367, 102 Pac. 860.)

It appears from the testimony of all the parties that the plaintiff was the manager of the business of the Dillon Implement Company, and, to quote the language of Mr. Phillips, one of the defendants: "My duties in connection with that corporation were generally those of a salesman—selling goods. Waldorf had the management of the concern. Mr. Arntz was the warehouseman." After the parties to this action had been associated together as officers of the corporation for about eight years, the defendants employed an expert accountant, one Briggs, to ex-

amine the books of the concern, which had been kept under the exclusive direction of the plaintiff. The expert found certain entries in the books, which, in his judgment, were erroneously made, and certain items were charged to the corporation which should have been charged to the plaintiff personally. As fast as erroneous entries were discovered, the plaintiff acknowledged them to be such and rectified the mistakes by immediately paying to the Dillon Implement Company the several amounts involved therein, so that at the conclusion of the examination, as the expert testifies, "so far as I could discover in the limited scope of my examination at that time, after the settlement had been made and these charges made to Waldorf, all questionable transactions, according to my judgment, were settled up and adjusted between him and the company. Then, so far as my examination proved, Mr. Waldorf was not indebted to the company a cent. So far as the things I discovered, they were all charged to him and paid eventually. It is nothing unusual in going through a set of books to find irregularities. Unfortunately it is too often the case." This testimony and other testimony of like import convinces us that the jury was amply justified in determining that, at the time when Waldorf transferred his stock to the defendants, he was not indebted to them or to the corporation in any sum whatsoever, with possibly one exception. That exception is this: It appears that, when the corporation was first organized, the salary of the plaintiff as manager was fixed at the sum of $150 per month, and that of the defendants at $75 each per month. The plaintiff afterward raised his salary to $200 per month, and subsequently to $250 per month. These amounts he drew from the company from month to month and charged himself therewith upon the books of the concern. The aggregate amount received by him over and above what he would have received had his salary remained at $150 per month was $3,700. He himself testified that he considered that he had a right, as manager, to raise his own salary, inasmuch as he had raised the salaries of other employees of the corporation, and that his reason for doing so was that he

felt, in view of what he knew of salaries paid to others under like circumstances, he was entitled to the increased amount. It does not appear that any objection was ever made by the defendants to this increase of salary, although the record discloses that perhaps they did not examine the books of the company. We think that the testimony of the plaintiff to the effect that as manager he had authority to raise his own salary established his *prima facie* right to do so, in the absence of any showing to the contrary. We believe that such matters are ordinarily regulated by the by-laws of corporations. The by-laws of this concern were not offered in evidence, and, for aught that is disclosed by this record, they may have authorized the plaintiff to raise his own salary as manager.

Mr. Phillips, one of the defendants, was called in rebuttal as a witness for the plaintiff. He testified: "Q. Please state just what Mr. Waldorf has gotten for his stock. What did you pay him for it? A. The way we paid him he came to us and desired to make a settlement in that way, to assign his whole stock, with the exception of $1,000, over to us, and we agreed to pay that $1,000 if we found that the business was all right and wouldn't be closed up. He was entitled to the $1,000. Q. Then as a matter of fact you didn't actually pay him anything? A. I don't know how you consider that. Q. Have you ever paid him a dollar? A. Not as a money transaction; no, sir. I paid him $200, as I told you before, when he was going to Seattle. I presume that this credit on this note for the Dillon Implement Company is the same $200. But that is a transaction that happened after I gave him the $200. Q. Then you didn't pay him the $200 on his stock? A. No, sir. What we paid him was the discrepancies disclosed in the business of the company. As to all those being settled with Briggs before he left, he couldn't settle anywhere. I don't know positively that there are any discrepancies. I do not positively know of any discrepancies to-day. I am pretty certain of it in my mind. I can't say that I know. I suspect this: That when Waldorf ran the business we never got any statements from him at all. Only

at the end of the year we asked him the profits of the business, at the end of the year, and we kept track of that. I can't say what the discrepancies were because I had no knowledge of the business. He was the sole and exclusive judge of the business, and he knows what the discrepancies were as well as anybody if he would only tell it. Q. Then all you have ever paid Waldorf for that stock is certain discrepancies which you think exist? A. That is all. Q. But you don't know whether they do or not? A. I know about this salary and this $3,700, and I know what Waldorf told me he had been doing. I know what he acknowledged to me. He said he had stole from the time the business started in, up to the date of the investigation, and he pleaded guilty.. And he says: 'That is all I can do.' He says, 'I will admit my guilt, and that is all any man can do.' He told me that twice. He didn't tell me how much he stole, and he has never told me. I don't think there is anybody but him and one or two other parties that does know about it. I don't claim to know."

The plaintiff testified that he had never acknowledged to Phillips or anyone else that he had stolen money from the business, and that in fact there were no discrepancies, and he had never stolen anything. This testimony raised an issue of fact, which it was the province of the jury to decide. They decided in favor of the plaintiff. There was some testimony to the effect that Briggs found certain irregularities or improper entries in the books relating to certain notes signed by Waldorf in the name of the Dillon Implement Company. These discrepancies or wrongful entries the plaintiff and his witnesses attempted to explain. The explanations appear to us to be reasonable, and the general verdict of the jury settled the issues therein involved in favor of the plaintiff. We think there is substantial testimony to warrant the general verdict. The witness Briggs also testified that he found and reported to defendants that the surplus of the business at the time of his examination, over and above $30,000, the amount of the capital stock, was $56,539.75, and that the value of the business was $86,539.75.

In view of the foregoing evidence, we cannot say that there is not·substantial testimony to warrant the finding and verdict of the jury, and the order of the court overruling the motion for a new trial.

We conclude, therefore, that the finding of the jury to the effect that the transfer of the stock was without consideration was warranted, and that such finding was a sufficient basis for the judgment of the court. It is therefore ordered that the judgment and order appealed from be affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY concurs.

MR. CHIEF JUSTICE BRANTLY, being absent, takes no part in the foregoing decision.