19  377
s27  466

MAHONEY, RESPONDENT, *v.* BUTTE HARDWARE COM-
PANY, APPELLANT.

[Submitted March 22, 1897.   Decided April 12, 1897.]

*Pleading—Denials—Admissions—Corporations—Agency.*

PLEADINGS—*Denials.*—A replication which denies that plaintiff's claim was assigned to
defendant for collection "as alleged in the answer," admits that it was assigned for
collection.

PLEADINGS—*Inconsistent.*—A complaint and a replication which are contradictory will
not support a judgment.

SAME.—Where, however, in such a case plaintiff, without objection, is allowed to make
his pleadings consistent, a judgment will not be reversed.

SAME—*Admissions.*—A party is not bound by admissions in a pleading which he has
abandoned or amended.

CORPORATIONS—*Ultra Vires.*—A corporation organized to carry on hardware business
has power to buy claims against third parties indebted to it, when such purchases
are made in good faith and for the protection of its own claims.

SAME—*Agency.*—Where it appears that the manager of a corporation has bought other
claims against third parties indebted to it, and that it has brought suit for the collec-
tion of the claim of plaintiff against such third parties purchased by such manager, a
verdict will not be set aside on the ground that the authority of the manager was not
shown.

SAME.—Where an agent's authority to purchase such claims is at issue, it is error to
refuse to admit in evidence the articles of incorporation of the company.

EVIDENCE.—It is error to refuse to admit cross-examination of a witness on an imma-
terial matter testified to by him, when an instruction is subsequently given on the
theory that such testimony was competent and material.

SAME.— Where, to show the authority of an agent to buy plaintiff's claim against third
persons, prior purchases of claims by him are admitted in evidence, it is error to
refuse to admit in evidence judgment-rolls in suits showing that such claims entitled
the holders thereof to a specific lien on property, as such evidence might tend to
show that the manager's authority was confined to the purchase of similar claims.

N. B.—This case was brought under former Code of Practice.

*Appeal from District Court, Silver Bow County.   J. J.
McHatton, Judge.*

ACTION by Edward L. Mahoney against the Butte Hardware
Company.   Judgment for plaintiff, and defendant appeals.
Reversed.

Statement of the case by the  justice delivering the opinion.

Mahoney (plaintiff and respondent herein) had an account
against the Shonbar Mining Company, a corporation, for a
boiler sold to it and labor performed in its behalf.   This ac-

count amounted to $1,691.31. He assigned it to the Butte Hardware Company, a corporation (appellant and defendant herein). The complaint contains two counts based on this transaction. The first count sets forth that said account was sold and assigned to defendant on November 3, 1891, and that defendant agreed to pay plaintiff therefor. The second count sets forth a sale, assignment, and transfer of the account to defendant for collection. It alleges that the defendant was to collect the account and pay it over to plaintiff; that defendant, as assignee of said account and other accounts due from the Shonbar Mining Company, had brought suit against the last-named corporation, and obtained a judgment, had levied an execution on its mines, and had obtained a sheriff's deed thereto. The relief prayed for in this second count was that the defendant should be declared a trustee of said mining property to the extent of $1,691.31. The answer of defendant denied any absolute sale; denied that the account had ever been collected, either in money or property; denied that any execution had ever issued on the judgment in which it was included; and denied that the Shonbar property had ever been sold under said judgment. It averred that, prior to the date of the assignment, four actions had been commenced in the proper district court against the Shonbar Mining Company, by certain lien claimants, and that a judgment for foreclosure had been obtained in said suits in October, 1891, to satisfy the liens, and that the property of the Shonbar Mining Company had been sold, and bought in for the aggregate amount of these four judgments. It averred that, during the period of redemption of said property—that is, before a sheriff's deed could be issued on the sale under the executions of the four judgments aforesaid—it had secured the judgment mentioned in the complaint; that, at the time of the institution of the suit resulting in such judgment, an attachment had been levied upon the property of the Shonbar Mining Company; and that, in order to protect its own and plaintiff's interests, it had become necessary to redeem the Shonbar property, or to purchase the sheriff's certificate of sale; and that accordingly it had

purchased said certificate from the original purchaser thereof, one McGillis; and that it subsequently received a sheriff's deed after the period of redemption had elapsed. It alleged "that the assignment made by plaintiff to the defendant of his said claim against the Shonbar Mining Company was taken by defendant as a matter of accommodation to plaintiff, and not for advancing any purpose of its own, but with the understanding that plaintiff himself, as well as the defendant, should take an interest in the said suit, and in enforcing the collection of the several claims made the basis of said suit, and in payment of the expenses of the same." It further alleged "that plaintiff has never paid anything as attorney's fees or for costs in said suit, and entirely neglected the said suit, and refused to pay the defendant any portion of the price of said property paid by defendant in procuring the said certificate of sale and sheriff's deed, although by defendant requested to do so." The replication contains the following denials: "Denies that plaintiff's claim against the Shonbar Mining Company was assigned to the defendant for collection, as alleged in defendant's answer to plaintiff's second cause of action; denies that the said account of plaintiff against the said Shonbar Mining Company was assigned to defendant for any other purposes than as alleged in plaintiff's complaint herein." The replication admitted that the Shonbar property was sold under the executions on the four judgments mentioned in the answer, but averred that the defendant purchased all the claims of all the laborers to whom the Shonbar Mining Company was indebted, and had been buying them at a discount, and that the McGillis suit (one of the four foreclosure suits mentioned in the answer) was prosecuted for and in behalf of the defendant. It then denies the allegations in the answer that the account was taken by the defendant as a matter of accommodation, etc., and substantially declares that it was agreed between plaintiff and defendant that, if defendant should obtain a sheriff's deed to the Shonbar property, the plaintiff should be paid his account in full, but without interest. It admitted that plaintiff had never paid any of the expenses connected

with the judgment, which included the account sued on, but averred that no such agreement existed requiring plaintiff to do so.   After the plaintiff had rested, and certain evidence had been introduced for defendant, plaintiff's counsel made the following announcement in open court:   "I desire to announce that we are going to stand upon our first cause of action in this complaint.   We have alleged two causes, but we think our first cause of action is the one we are entitled to recover on; and our evidence only goes to support that allega ion, which is a sale of an account to the Butte Hardware Company on condition that they were to pay it on procuring title to this property."   No exception was saved to the withdrawal of the second count in the complaint.   It appears from the record that the Shonbar Mining Company was financially involved. Numerous laborers' liens, amounting in all to some $7,000, had been filed on its property, and it was indebted to other parties in the sum of some $3,800; the appellant, the Butte Hardware Company, being a creditor to the extent of $1,123.50.   Four suits had been commenced to foreclose these liens in the month of October, 1891.   McGillis, the plaintiff in one of them, had sued on a lien claim of his own and a number of other such claims which had been assigned to him. The manager of the Shonbar Mining Company came to Watson, the manager of the Butte Hardware Company, and suggested to him and other officers of it that their company should take assignments of the various accounts against the Shonbar Company, and put them into one judgment, so as to save expense to his corporation.   He stated that he believed that all the debts of the Shonbar Company would be paid in a short time.   This suggestion was followed, and various accounts were assigned to appellant, ranging from very small to large amounts (plaintiff's account among them).   Suit was brought by appellant on its own and these assigned accounts, and in the complaint in this suit it was alleged that the Mahoney and the other assigned accounts had been sold and transferred to it.   The claims in the McGillis suit were bought from time to time, at a discount, by appellant, but whether before or after

the assignment of plaintiff's account, does not appear.    Watson, appellant's manager, seems to have acted in its behalf in the matters connected with these assignments, purchases, and suits aforesaid, and many of the transactions were had at the place of business of appellant.    The evidence on the trial was conflicting.    The jury found a verdict for plaintiff, and the appeal is from an order  denying a motion for a new trial and the judgment.

*F. .T. McBride*, for Appellant.

*John W. Cotter*, for Respondent.

Buck, J.—Do the pleadings support the judgment? The first cause of action set forth in the complaint is directly in conflict with the one in the second count. The replication first denies "that plaintiff's claim against the Shonbar Mining Company was assigned to the defendant for collection, as alleged in defendant's answer." This denial is equivalent to an admission that the account was assigned to it for collection.    The second denial of the replication also is equivalent to a declaration that all the statements of the complaint are true.    The replication then sets forth a cause of action which, while not inconsistent with, differs somewhat from the cause of action relied upon in the first count of the complaint.    If the plaintiff had not been allowed without objection to abandon the allegations of his pleadings on which one of his theories of recovery was based, we should not hesitate to follow the rule laid down in *Hauswirth* v. *Butcher*, 4 Mont., at page 309, 1 Pac. 714, and would reverse the judgment, on the ground that the complaint and replication, being contradictory, do not support it.    In the same verified complaint, plaintiff swears that certain facts are true, and that these facts are not true; and, in his verified replication, he also swears to statements contradictory to each other, and which substantially reiterate the contradictions contained in the complaint.    The complaint is inconsistent and the replication is inconsistent, each within itself and each as to the

other.    But this inconsistency was eliminated when respondent
was permitted to abandon the cause of action in his second
count, and to substitute for the cause of action in the first
count the one more particularly, but not inconsistently, averred
in the replication.

Appellant insists that the respondent is absolutely bound by
his admission in the pleadings that the account had been as-
signed for collection.    We do not think he was.    The rule is
that a party is bound only by the admissions in the pleadings
upon which he goes to trial.    (*Pfister* v.  *Wade*, 69 Cal. 136,
10 Pac. 369.)

Appellant contends that the respondent failed to establish
any authority on the part of Watson, its manager, to enter
into the agreement with him for the sale of the account.    The
argument is that appellant is a corporation organized for the
purpose of dealing in hardware; that, under the terms of its
charter and the laws of the state, even its directors could not
have authorized the purchase of plaintiff's claim; and that far
less, therefore, could its manager, Watson, have purchased
the account in behalf of the company.    Appellant does not
dispute the fact that it took assignments of accounts against
the Shonbar Mining Company, and brought suit upon them.
It admits that it bought the McGillis claims.    It insists that
these latter accounts were bought to protect its own claim
against the Shonbar Company.    It virtually concedes that
Watson, its manager, represented it in all these matters.    It
does not for a moment suggest that he had no authority to so
represent it, but contends that, while Watson had authority to
take assignments of accounts for collection, and to buy lien
claims against the Shonbar Company to protect appellant's
interest, neither he nor the directors of the company had au-
thority to purchase plaintiff's account.    Under such a condition
of facts, is this a tenable position?    We think not.    Why it
should be *ultra vires* to buy plaintiff's claim, but not *ultra vires*
to buy the McGillis lien claims and the sheriff's certificate of
sale under the lien foreclosure suits, we do not comprehend.
Even if Watson had no authority to purchase plaintiff's claim,

if he did purchase it under the circumstances aforesaid, is appellant now in a position to reject his act in doing so?   Can it not be reasonably inferred that it countenanced whatever he (Watson) did?

Appellant brought suit on the claim after assignment, and reduced it to judgment.    In the verified complaint it filed for the purpose, it set forth that the plaintiff's claim had been sold and assigned to it.   The plaintiff testified that he had a right to a lien, and would have secured his account by filing a lien but for the agreement entered into with Watson.   If Watson had authority from his company to accommodate the Shonbar Company by taking assignments of accounts, and had authority to buy other lien claims against the Shonbar Company to protect his own company's claim, how can it, in fairness, be contended, if plaintiff had a right to and could have filed a lien and secured his claim, that he (Watson) had no authority to purchase plaintiff's claim also for the protection of appellant?   It was not *per se* an act of *ultra vires* for the appellant to purchase claims against the Shonbar Mining Company, secured by liens, in order to protect its own account. Conceding that it was organized to do a hardware business only, still, if, in the course of its legitimate business, it became necessary, in the exercise of business prudence, to purchase these claims for the protection of its own interest, and such claims were purchased in good faith, for that purpose only, that would not have been a violation of its charter or of the statutes of the state pertaining to corporations of its character.    There was evidence to support the verdict as to an absolute purchase by appellant of respondent's account.

Appellant offered in evidence its articles of incorporation, for the purpose of showing what business it was authorized to transact, as affecting the question of Watson's authority.   An objection was sustained to the introduction of the same.   This was error.   The case was tried apparently simply with reference to whether or not the agreement between Watson and plaintiff was for a sale or not.   Watson's authority to bind the company in the purchase of this account was an issue in

the case also, however, and it should not have been ignored.

The plaintiff was allowed to testify as to the date of the items of his account, in order to show that he was entitled to a lien thereon at the date of its assignment, and an instruction was asked and given as to this testimony.   On cross-examination plaintiff was asked:   ' At what date did you sell the first item to the Shonbar Mining Company ?'' This was objected to as immaterial, and the objection sustained.   On the theory that the sole issue in the case was as to the terms of the agreement between Watson and plaintiff, regardless of Watson's authority to bind his company, no doubt all evidence as to the items of the account, in order to establish a right to a lien, was immaterial.   But the question of Watson's authority, and, as connected with it, the question of whether plaintiff had a right to a lien, were also involved, and, as shedding light on these questions, such evidence was admissible.   But, even if an answer to the question asked plaintiff had not been admissible, allowing plaintiff to give such testimony as to the items of his account on direct examination, and refusing to allow appellant to cross-examine, and then giving an instruction as to such testimony on the theory that it was competent and material evidence, was prejudicial error.

The judgment rolls in the foreclosed lien suits were offered, for the purpose of showing the character of the suits and liens, and as bearing on the question of Watson's authority to purchase plaintiff's account.   On objection they were excluded. This was error.   They should have been admitted, for, if it had been shown that the plaintiff was not entitled to a lien on the account he assigned to appellant, they might have shed light in the determination by the jury of whether or not Watson had authority to purchase for the appellant an account not secured by a lien.

There are other errors assigned, but we need not discuss them, as what we have already decided disposes of them.  Not only the question of whether or not Watson, the manager of appellant, absolutely purchased plaintiff's account, should have been submitted to the jury, but also the question of

whether or not Watson had authority to purchase it, and, as incidental thereto, the question of whether plaintiff was entitled to a lien on his account, should also have been submitted. The judgment is reversed, and the cause remanded, with directions to the lower court to grant a new trial.

*Reversed and Remanded.*

PEMBERTON, C. J., not sitting.   HUNT, J., concurs.