BERNE, TRUSTEE, RESPONDENT, *v.* STEVENS, APPELLANT.

(No. 5,153.)

(Submitted April 27, 1923. Decided May 12, 1923.)

[215 Pac. 803.]

*Corporations—Stock Subscription Contract—Interpretation— Practical Construction by Parties—Effect—Appeal—Theory of Case—Pleading—Amendment Supersedes Original—Trial —Instructions.*

Pleading—Admissions—Amended Pleading Supersedes Original.
    1. An amended pleading supersedes the original and the latter at once becomes *functus officio,* and the party filing it is not bound by the admissions in the superseded pleading.

[67 Mont. 254.]

Trial — Instructions — Assuming as a Fact a Matter in Issue — Proper Refusal.

    2.  An offered instruction which assumes as a fact a matter in issue is properly refused.

Corporations—Stock Subscription Contract—Taking Effect—Contingencies—Maxim *"Expressio unius,"* etc., Applicable.

    3.  Where stockholders of a co-operative publishing company agreed to guarantee a named sum for operating a newspaper, and the agreement provided that every subscriber should at once deliver to a trustee the amount of his subscription in cash or bankable note, but did not provide that a failure in that respect should avoid the agreement or postpone the time when it should take effect but, on the contrary, provided that it should become operative when thirty or more should sign, the designation of the single contingency on the happening of which it should be in full force excluded every other consideration, under the maxim, *"Expressio unius est exclusio alterius,"* which is as applicable to the interpretation of contracts as it is to the interpretation of statutes.

Contracts—When Subject to Interpretation—When not.

    4.  While in the interpretation of a contract, the language of which is ambiguous and uncertain, the attending circumstances may be examined to determine its proper construction, this may not be done where its language is clear and unambiguous.

Same—Practical Construction by Parties—Effect.

    5.  Where the parties to a contract, claimed by defendant to have been uncertain and ambiguous, had given a practical construction to the agreement in conformity with plaintiff's theory of the case, such construction is entitled to the most serious, if not controlling, consideration, in the interpretation of the writing, it being presumed that the construction thus placed upon it indicated the intention of the parties in entering into the agreement.

Same—Appeal—Theory of Case.

    6.  Where defendant in an action on a promissory note given for a stock subscription pursuant to a trust agreement proceeded at the trial upon the theory that the agreement was ambiguous and uncertain, giving testimony on that theory, and the court adopted such theory and submitted the disputed questions of fact to the jury, he was foreclosed from asserting on appeal that it was clear and unambiguous.

*Appeal from District Court, Flathead County; C. W. Pomeroy, Judge.*

ACTION by W. C. Berne, trustee, against J. H. Stevens. Judgment for plaintiff and defendant appeals. Affirmed.

Cause submitted on briefs of Counsel.

*Mr. C. S. Baldwin* and *Mr. J. H. Stevens,* for Appellant.

*Mr. B. F. Maiden,* for Respondent.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was brought upon a promissory note for $100, dated September 21, 1920, and due January 1, 1921. In the amended answer it is alleged that the note was executed and delivered under and in pursuance of an alleged trust agreement, dated August 7, 1920, and not otherwise; that the trust agreement never became operative, and that the note is without consideration. In an amended reply plaintiff denied that the note was executed and delivered solely in pursuance of the terms of the trust agreement, and further pleaded facts by which it was sought to avoid the special defense interposed. The trial of the cause resulted in a verdict for plaintiff. A new trial was denied, and defendant appealed from the judgment.

The only errors assigned are predicated upon the refusal of the trial court to give five instructions tendered by the defendant. In each of the first four of these offered instructions the court was requested to charge that it was admitted that the note was executed and delivered under and in [1] pursuance of the trust agreement. In an attempted justification of these requests, counsel for defendant refer to the original reply, in which such an admission appears. It is elementary, however,' that when an amended pleading is filed it supersedes the original and the latter at once becomes *functus officio* (*Gettings* v. *Buchanan*, 17 Mont. 581, 44 Pac. 77; *Ben Kress Nursery Co.* v. *Oregon Nursery Co.*, 45 Mont. 494, 124 Pac. 475), and that the party is not bound by the admissions in the pleading which has thus been superseded (*Mahoney* v. *Butte Hardware Co.*, 19 Mont. 377, 48 Pac. 545).

If the trial court had given these instructions, or any of [2] them, it would have assumed as a fact a matter which was in issue and for that reason would have erred. (*Ferris* v. *McNally*, 45 Mont. 20, 121 Pac. 889.) Furthermore, in each of the five requests the court was asked to adopt defendant's construction of the trust agreement, and whether that con-

struction should have been adopted is the principal ground in controversy.

The agreement reads as follows: ''Know all men by these presents, that we, the undersigned stockholders in the Co-operative Publishing Company of Kalispell, Montana, which said company are the owners of that certain newspaper known and designated as the Kalispell Bee, which said paper is at this time a weekly newspaper published in Kalispell, Montana, being aware of the fact that it takes money to operate a newspaper plant and being desirous of making a success of said newspaper, and also being cognizant of the fact that the income from said newspaper plant may not be sufficient at times to take care of and pay any and all debts that might accrue against said business hereby guarantee the sum of $3,000 for the operating of said newspaper from the date hereof until the first day of January, 1921, said sum to be paid at once by cash or bankable note into the hands of W. C. Berne, Trustee, who has been named and designated by the directors of said Co-operative Publishing Company and which said sum or any portion thereof shall be at any and all times between the date hereof and the said first day of January, 1921, at the disposal and use of the said manager of said newspaper, with the approval of said trustee, for the use and benefit and for operating said newspaper plant to at any time draw upon said trustee for such sum or sums of the said $3,000 as he may deem necessary for said purposes and we hereby direct and authorize said trustee to honor and pay over to said manager such sum or sums of said $3,000 as he may from time to time require for the successful operating of said newspaper and plant between the date hereof and the first day of January, 1921. It is further understood that any portion of said sum of $3,000 remaining in the hands of said trustee on the first day of January, 1921, shall be returned to the parties hereto advancing the same prorated. Stock to be issued for any part of this fund used. This contract and

agreement to be in full force and effect when thirty or more signatures have been obtained.

"Dated this 7th day of August, 1920."

Defendant insists that the agreement never became effective: (1) Because each subscriber did not at once deliver to plaintiff the amount of his subscription in cash or its equivalent, a bankable note; and (2) because the agreement was not signed by thirty persons, each of whom was a stockholder of the Co-operative Publishing Company at the time the subscription was made.

1. While it is true that the agreement provides that every [3] subscriber shall at once deliver to plaintiff the amount of his subscription in cash or bankable note, it does not provide that a failure in this respect shall avoid the agreement or postpone the time when it shall take effect; on the contrary, it is provided specifically that the agreement should become operative as soon as thirty or more signatures have been obtained. The designation of this single contingency upon the happening of which the agreement should be in full force and effect excludes every other consideration. The maxim, "*Expressio unius est exclusio alterius*," applies to the interpretation of contracts as well as to the interpretation of statutes. (13 C. J. 537.)

2. Defendant contends that the agreement was to become effective only when signed by thirty persons, each of whom was a stockholder at the time he attached his signature. For the purpose of illustrating this contention, the agreement may be paraphrased as follows: The undersigned stockholders of the Co-operative Publishing Company guarantee the sum of $3,000 for the use and benefit of and for operating said newspaper plant, this agreement to be in full force and effect when [4] thirty or more signatures have been obtained. If this language is clear and unambiguous, resort may not be had to extraneous facts or circumstances to aid its interpretation. (*Quirk* v. *Rich*, 40 Mont. 552, 107 Pac. 821.) On the other hand, if the agreement is uncertain or ambiguous on its face,

the attending circumstances are to be examined to determine its proper construction. (Sec. 7538, Rev. Codes 1921; *Alywin* v. *Morley*, 41 Mont. 191, 108 Pac. 778; *Butte Water Co.* v. *City of Butte*, 48 Mont. 386, 138 Pac. 195.)

It is possible to suggest three distinct constructions to be placed upon the language above: (a) That the agreement should be signed only by persons who are stockholders at the time the writing was prepared, or (b) that the stockholders guaranteed to raise $3,000 by subscriptions obtained from any available source, or (c) that the writing should be signed by persons who were or were to become stockholders. But speculation is unnecessary. The cause was tried in the district court upon the theory that the agreement was uncertain or ambiguous, and defendant himself first introduced evidence as to the intention of the parties. He testified: "I gave this $100 note under this agreement. The consideration was supposed to be that the agreement here would be signed by thirty stockholders of the Co-operative Publishing Company." On cross-examination he testified: "We are not seeking to raise $3,000 among stockholders and prospective stockholders. We were seeking to raise it among stockholders." In rebuttal plaintiff testified that the agreement was signed by thirty persons; that some of them were not stockholders at the time the subscriptions were obtained, but all were stockholders at the time of the trial. He testified further that after twenty-nine subscriptions were obtained he submitted the agreement to defendant, who examined the list of subscribers and then attached his signature as the thirtieth subscriber and made no objection that some of the subscribers were not stockholders. John Kennedy, a witness for plaintiff and one of the subscribers to the agreement who was not a stockholder prior to the time he signed, testified that he was solicited by plaintiff, a Mr. Small, and defendant Stevens to become a stockholder and subscriber; that after he attached his signature he was asked to give his note for the amount of his subscription, but declined to do so and sent his check to plaintiff and later

received his certificate of stock. By their general verdict for plaintiff the jury determined that the testimony of these [5] witnesses is true, and, if true, it is manifest that plaintiff and defendant had given a practical construction to the agreement in conformity with plaintiff's theory prior to and at the time it received the last of the thirty signatures, and such construction is entitled to the most serious, if not controlling, consideration, as it is presumed to indicate the intention of the parties. (*National Bank of Gallatin Valley* v. *Ingle*, 53 Mont. 414, 164 Pac. 535.) Plaintiff testified that as these subscriptions were solicited, the subscribers were informed that stock certificates would be issued for so much of the subscriptions as was used, and that in fact the full amount subscribed was used, so that every subscriber was likewise given the same interpretation of the agreement as plaintiff and defendant had placed upon it.

3. Finally, defendant contends that he should not be held [6] liable on his note because the $3,000 was to be used exclusively to pay the current expenses of the newspaper in excess of the receipts for the period commencing August 7, 1920, and ending January 1, 1921, and since the receipts for that period equaled or exceeded the expenses, the consideration for the note failed, and plaintiff violated the trust imposed in him when he used the $3,000 to discharge debts against the paper, all of which were in existence prior to August 7, 1920. The agreement provides that the $3,000 is secured for "operating said newspaper from the date hereof (August 7, 1920) until the first day of January, 1921," and again that the money shall be "at the disposal and use of the said manager of said newspaper with the approval of said trustee for the use and benefit and for operating said newspaper plant." And again it is provided that plaintiff as trustee shall "pay over to said manager such sum or sums of said $3,000 as he may from time to time require for the successful operating of said newspaper and plant between the date hereof and the first day of January, 1921."

Again, defendant is foreclosed by the theory which he adopted in the trial court. If, as he now contends, the language of the agreement is plain and clearly manifests the intention of the parties that no part of the $3,000 should be used to pay pre-existing debts, then there was not any occasion for him to testify as to the intention of the parties with respect to these provisions of the agreement, but he did first introduce evidence of such intention. He testified: ''The money was not to be used to pay any of the debts incurred previous to the date of the agreement.'' Plaintiff testified that at the time the agreement was drawn the paper was in debt; that defendant, who was then secretary of the Publishing Company, advised that the debts amounted to about $1,850; that in fact they exceeded $3,000; that on August 9 holders of claims aggregating about $1,850 were demanding payment and threatening to sue and close the plant; that to avoid the expense of litigation and the suspension of the paper he (plaintiff) advanced $1,850, with which amount the most pressing claims were discharged; and that it was the understanding and intention of the parties that this sum should be repaid to him out of the $3,000. The witness Fehlberg testified to substantially the same things. The trial court apparently proceeded upon the theory that it was for the jury to determine whether the $3,000 or any part of it was to be used to pay the pre-existing debts, and under all the circumstances developed we are not disposed to say that such a theory was erroneous. Certainly money expended on August 9, 1920, to discharge valid debts and prevent a suspension of the publication, might well be said to have been expended ''for the use and benefit and for operating said newspaper plant,'' and ''for the successful operating of said newspaper and plant between the date hereof [August 7, 1920] and the first day of January, 1921.''

There are some palpable inconsistencies in the testimony introduced by plaintiff, but these reflect only upon the weight to be given to the evidence in its entirety.

The jury having resolved all controverted questions in favor of plaintiff, and the evidence appearing to be sufficient to sustain the verdict, the trial court did not err in refusing a new trial.

The judgment is affirmed.

                                                    *Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, GALEN and STARK concur.

Rehearing denied June 8, 1923.