STATE EX REL. WHITLOCK, APPELLANT, *v.* STATE BOARD OF EQUALIZATION ET AL., RESPONDENTS.

(No. 7,401.)

(Submitted May 2, 1935. Decided May 25, 1935.)

[45 Pac. (2d) 684.]

*Messrs. Murphy & Whitlock,* for Appellant, submitted a brief; *Mr. A. N. Whitlock* argued the cause orally.

*Mr. Raymond T. Nagle,* Attorney General, and *Mr. Jeremiah J. Lynch,* First Assistant Attorney General, for Respondents, submitted a brief; *Mr. Lynch* argued the cause orally.

78

MR. JUSTICE ANDERSON delivered the opinion of the court.

This proceeding is one in certiorari, brought for the purpose of reviewing the action of the state board of equalization in denying the application made to it by the relator, a taxpayer, for the revision of his Montana state income tax for the year 1933, under the provisions of Chapter 181, Laws 1933. The trial court entered a judgment affirming the action of the board in all respects and awarding the board its costs. The appeal is from this judgment.

There was no dispute as to the facts. The taxpayer made his return for the year 1933 upon the form prescribed by the board. There was no question as to his having listed properly all of his taxable income for that year; however, in preparing his return for the purpose of establishing his net taxable income he deducted from his gross income the sum of $7,844.64, which sum represents the loss sustained by him from the purchase and sale of certain corporate bonds. These bonds were all purchased prior to the year 1933; they were all sold during that year.

There were seventeen items involved, each item containing one or more bonds. In each instance the price for which the bonds were sold in 1933 was less than the cost price at the time they were purchased, and the total difference between purchase price and selling price is the sum of $7,844.64, which amount was claimed as a deduction by relator under section 8, subdivision 5, of the above chapter, and was actually deducted in making his return. The disposition of the bonds was by actual sale. These transactions were entered into for profit though not connected with trade or business, and no part of the claimed loss was compensated for by insurance or otherwise. Although all of the bonds were sold for less than their cost to the taxpayer, six of the seventeen items only were sold for less than the market value of these various bonds on January 1, 1933. The loss on these six items computed by deducting the selling price from the market price on January 1, 1933, was $920.98.

In all other instances the January 1, 1933, value was as low or lower than the selling price.

The board in re-examining the taxpayer's return decided that he could deduct as a loss only the amount of $920.98, instead of the total loss claimed by him and representing the difference between the sale price and the purchase price. The tax computed in accordance with the board's computation amounts to $378.84, or $271.67 more than the tax as computed by the taxpayer. The latter paid the entire tax as computed by him in his return, and paid the additional tax computed by the board under protest, and within the time allowed, upon notice as required by the statute, and the filing of the required bond, applied to the district court for a writ of review. The writ was granted and return was made by the board. The matter was submitted to the court, and judgment was entered as noted supra.

The taxpayer in his brief says: "The sole question involved is whether or not the taxpayer was entitled to deduct his entire loss sustained from the sale of bonds or whether he could only deduct the loss, as to items where there was a loss, represented by the difference between the value on January 1, 1933, and the sale price."

Section 8 of Chapter 181, supra, provides that "in computing net income, there shall be allowed as deductions: * * * (5) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with trade or business. * * * "

The taxpayer contends that under this quoted portion of the section, a loss is not "sustained" until there is a completed sale or final disposition of the property; that "a reading of the entire section discloses that there is no limitation upon the deduction made, except in the one case, and that is subdivision 7, which relates to worthless debts. In that case, but in no other, the law fixes a basic date of January 1, 1933, and provides that no more than the fair market value of the debt on that date shall be deducted. In all other cases the only limitation set forth is

that the loss must be sustained during the taxable year, and if a loss is sustained under the law as written, the taxpayer is entitled to deduct the entire loss and no limitation is placed thereon by the Act itself.'' The pertinent portion of subdivision 7 of section 8, alluded to supra, reads as follows: '' (7) Debts ascertained to be worthless and charged off within the taxable year. In the case of a debt existing on January first, Nineteen Hundred and Thirty-three, no more than its fair market value on that date shall be deducted.''

The taxpayer argues further that, since the legislature incorporated the basic date of January 1, 1933, in subdivision 7, supra, it thereby impliedly excluded the use of such date from the other subdivisions of section 8; otherwise stated, it is contended that applying the familiar rule of statutory construction '' *expressio unius est exclusio alterius*'' results in attributing that meaning to only subdivision 7.

The Federal Income Tax Law (26 U. S. C. A., sec. 955, (a) (5), as now written, contains a provision identical with the quoted portion of subdivision 5, section 8, of our Act. However, under the federal law (26 U. S. C. A., sec. 935), the basic date for determining the value of the property is March 1, 1913, where the property was acquired before that date, being the date when the first Federal Income Tax Law became operative. As already indicated, the portion of our statute under consideration contains no such specific basic date.

The federal courts have uniformly held that losses may be deducted only when they result from or are evidenced by closed transactions. (*Howard* v. *Commissioner*, (C. C. A.) 56 Fed. (2d) 781; *Dresser* v. *United States*, 55 Fed. (2d) 499; *Burnett* v. *Huff*, 288 U. S. 156, 53 Sup. Ct. 330, 77 L. Ed. 670.) The effect of these and many other decisions under the federal law is that a taxpayer may not claim a deduction for loss on an investment in property until such time as he has finally disposed of it, until then no loss is sustained. We find ourselves in accord with that rule.

The question having been determined as to when the taxpayer has sustained a loss, there remains the matter of determining

the extent of the loss. We are unable to understand wherein the decisions cited, supra, and others of like character, are helpful in the solution of this remaining question. All of the Federal Income Tax Laws enacted since the adoption of the Sixteenth Amendment to the Constitution have contained the basic date of March 1, 1913, for determining the value of property acquired before that date for the purpose of arriving at the gain or loss resulting from a transaction, commencing with the Act of 1916 (Chap. 463, 39 Stat. 756, sec. 2, subsec. (c), with the exception of the Act of 1913 (Chap. 16, 38 Stat. 114). There no basic date was provided as is found in all the subsequent Acts.

In the case of *Lynch* v. *Turrish*, (C. C. A.) 236 Fed. 653, arising under the Federal Income Act of 1913, the following facts were involved: Turrish was a stockholder in a corporation owning as its sole asset certain timber lands in Idaho, purchased by the corporation in 1903. These lands gradually appreciated in value from the date of purchase to March 1, 1913, to the extent that their value had doubled. In 1914 the corporation sold all these lands for twice the purchase price, and distributed to the taxpayer, as a liquidating dividend, double the amount which he had invested in the stock of the corporation at or near the time of the purchase of the timber lands. It was sought to impose a tax upon one-half of the amount received as the liquidating dividend, or the excess of the dividend over the cost price of the stock. It was there held that this increase in value which had accrued entirely before the operative date of the law could not be subjected to the imposition of an income tax. The court based its conclusion in part upon the proposition that, in order to sustain the tax, it was necessary to give to the words of the Act retrospective operation, which would not be done unless they were so clear, strong, and imperative that no other meaning could be attributed to them, or unless the intention of the legislative body could not otherwise be satisfied. The cause was affirmed on appeal to the Supreme Court of the United States (247 U. S. 221, 38 Sup. Ct. 537, 62 L. Ed. 1087).

In the case of *State ex rel. Bundy* v. *Nygaard*, 163 Wis. 307, 158 N. W. 87, L. R. A. 1917E, 563, where stock was purchased and increased in value before the operative date of the Income Tax Law and was sold after that date for the appreciated value, it was held that no tax could be imposed upon the increase of the sale price over the cost price.

In *Vincent* v. *McLaughlin*, (C. C. A.) 61 Fed. (2d) 657, 658, a corporation whose sole asset was a steamship disposed of its property in the year 1917 at a greatly increased price over its cost. The entire appreciation in value occurred during the year 1916. It was sought to impose the tax at the rate provided for by the Act of 1917, whereas the taxpayer insisted that, since the entire appreciation in value occurred in the year 1916, the tax should be levied at the rates provided for in the Act of 1916. The arguments in behalf of the respective parties were stated by the court in its opinion, as follows: ''The collector's argument is that the mere increase in value of a capital asset is not a profit, and cannot be taxed or considered as such, until the increase is realized by a sale of the capital asset, that a surplus is a profit to the corporation which has not been distributed, and that there can be no surplus within the meaning of the statute until a profit has been realized to the corporation by the sale of the asset which has increased in value; in short, that there cannot be an accumulated surplus, or accumulated undivided profit to the corporation until the sale of the asset is consummated. Consequently it is confidently argued that, the sale having been consummated in the year 1917, the profit derived therefrom must be deemed to have been accumulated in the year 1917, notwithstanding the stipulated fact that the increase in value occurred before the beginning of that year and that there was no increase in value during the year 1917. The taxpayer, on the other hand, insists that the increase in the value of the capital assets of the corporation is an accumulated surplus within the meaning of section 31 (b), supra [40 Stat. 336], and that, the increase having occurred entirely in the year 1916, therefore the 1916 year rate should apply to the distribution to the taxpayer from the assets of the corporation, although the

actual sale and the actual distribution occurred in the year 1917." The court held that the profit resulting from the increase in value of the property had accumulated over a period and not instantly at the moment of sale, and therefore rejected the contention of the collector.

The tax under our Income Tax Law shall be levied, collected and paid in the year 1934 with respect to the calendar year 1933. (Sec. 2, Chap. 181, Laws 1933.) This Act was approved March 16, 1933. To adopt the construction of the statute contended for by the taxpayer, must of necessity give the law retrospective operation beyond the calendar year 1933. Section 3, Revised Codes 1921, declares: "No law contained in any of the codes or other statutes of Montana is retrospective unless expressly so declared." This statute is a rule of construction. (*Mills* v. *State Board of Equalization*, 97 Mont. 13, 33 Pac. (2d) 563.) We find no expres language in Chapter 181 warranting our giving the retroactive operation necessary to adopt the construction contended for by the taxpayer. The clear intention of the legislature in enacting Chapter 181 was to tax incomes received in the year 1933. If gains accruing before the operation of the Income Tax Law, but not actually realized by the taxpayer until after the operation of the law, are not properly taxable as income, as was held in the cases cited, supra, then losses accumulating before the law became operative, although not actually sustained until afterward, cannot be allowed as deductions unless the taxpayer's theory of implied exclusion may be sustained.

Before passing to the discussion of the further question, it may be well to observe that we are mindful of the general rule that revenue laws are strictly construed in favor of the taxpayer. (*Shubat* v. *Glacier County*, 93 Mont. 160, 18 Pac. (2d) 614.) But the contrary rule applies to exemptions. (Id., 59 C. J. 1135.) True, we are here considering a deduction and not an exemption. There is doubtless a technical distinction between an exemption and a deduction; however, in both instances the result is the same, namely, the taxpayer is relieved of the payment of a tax by either deduction or exemption.

Where the reason is the same, the rule should be the same. (Sec. 8739, Rev. Codes 1921.) Hence, the statute allowing a deduction should not be construed in accordance with the rule of liberal construction applied to revenue laws generally.

The rule of "*expressio unius est exclusio alterius*" has been ▮ recognized by this court as a rule of statutory construction. (*Page* v. *New York Realty Co.*, 59 Mont. 305, 196 Pac. 871; *Berne* v. *Stevens,* 67 Mont. 254, 215 Pac. 803.) The rule does not apply if there is some special reason for mentioning one thing and none for mentioning the second which is otherwise within the statute; the absence of any mention of the latter will not exclude it. (Lewis' Sutherland on Statutory Construction, 2d ed., sec. 495; *Parks* v. *Commissioners of Soldiers' & Sailors' Home,* 22 Colo. 86, 43 Pac. 542; *Lexington* v. *Bank,* 130 Mo. App. 687, 108 S. W. 1095; *Brown* v. *Buzan,* 24 Ind. 194.)

If the date of January 1, 1933, were omitted from subdivision ▮ 7, supra, relating to the charging off of worthless debts, the taxpayer, if he had not already done so, might on any day during the year 1933, by making such charge, secure a deduction for the full amount of the debt, although it was a worthless one on December 31, 1932, as it was on the date of the entry. The primary purpose of the legislature in the enactment of Chapter 181 was to impose a tax upon net incomes, to be determined by deducting from the gross incomes business expenses and losses of each tax year. Without the date of January 1, 1933, in subdivision 7, supra, a creditor might by a mere entry in his accounts charge off a debt which was admittedly worthless during all of the year in question, and during all of the previous year. The worthless debt became a business loss whenever it arrived at that condition. Hence, in order to prevent a taxpayer in the case of a worthless debt claiming as a deduction a loss that had been sustained in fact during some previous year, the basic date of January 1, 1933, was written into subdivision 7, supra. Therefore, a special reason existed for so drafting this subsection.

We have already determined that, under the provisions of subdivision 5, supra, depreciation in the value of property oc-

curring before the Income Tax Law could not be deducted as a loss for the year following the commencement of the operation of the law. It follows that there was no special reason why the same basic date should be written into subdivision 5, as there was with reference to subdivision 7. Both subdivisions, as written, are harmonious and in accord with the legislative purpose as here announced. The rule of statutory construction contended for by the taxpayer cannot be sustained.

In view of what has been said, other questions argued need not be decided.

Judgment affirmed.

ASSOCIATE JUSTICES MATTHEWS, STEWART and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent on account of illness, takes no part in the foregoing decision.